CONNOR CARMODY

*v.*

THE CHICAGO AND ALTON RAILROAD COMPANY *et al.*

*Filed at Springfield September 27, 1884.*

1. LIMITATION—*of twenty years' adverse possession.* Where the party under whom a plaintiff in ejectment claimed land occupied by a railway company, made a conveyance of the same to a railway company, moved his fence, and gave it possession of the land more than twenty years before suit brought, and such company, together with the defendant corporation, as its successor,

had occupied the same ever since under such release, it was *held*, that the plaintiff could not recover.

2. RAILROAD—*right to acquire more than one hundred feet.* A charter giving a railroad company a right to acquire a strip of land not exceeding one hundred feet in width, has reference to right of way for a single or double track, and does not prohibit it from acquiring more land for depot grounds and side-tracks at stations.

APPEAL from the Circuit Court of Greene county; the Hon. GEORGE W. HERDMAN, Judge, presiding.

Mr. JAMES R. WARD, for the appellant:

Section 1 of the charter of the Jacksonville and Carrollton Railroad Company only authorized the taking of a strip of land not exceeding one hundred feet in width. The release specifies its purpose to be "for depot ground and right of way, and for no other purpose." Section 15 of the charter provides: "The width of said railroad is to be determined by the said corporation, within the limits prescribed by the first section of this act."

Such grants to a corporation are to be strictly construed. *Railroad Co.* v. *Dunbar*, 20 Ill. 626; *Webster* v. *People*, 98 id. 347; *Newhall* v. *Railroad Co.* 14 id. 275.

The limitation in the charter goes to its capacity to acquire more land than a strip one hundred feet wide. *Catholic Congregation* v. *Germain*, 104 Ill. 446; *Penn* v. *Bornman*, 102 id. 533; *Fridley* v. *Bowen*, 87 id. 151; *United States Trust Co.* v. *Lee*, 73 id. 143; *Starkweather* v. *American Bible Society*, 72 id. 50; *Carroll* v. *East St. Louis*, 67 id. 569.

- The paper from William R. Davis was not intended to pass any title. The right of way was personal to the company in gross, which could not be transferred or assigned to any other company or person. 2 Kent's Com. 420; *Kœlle* v. *Knecht*, 99 Ill. 401; *Railroad Co.* v. *Kœlle*, 104 id. 460; *Emerson* v. *Rudd*, 19 id. 564.

Messrs. WITHERS & HENSHAW, for the appellees:

Luella V. Davis did not own the entire interest in this strip of land, and could not convey any greater estate than she had.

Possession of land and a claim of right are sufficient to charge all persons of the occupant's right, whether legal or equitable. *Lumbard* v. *Abbey*, 73 Ill. 177; *Smith* v. *Heirs of Jackson*, 76 id. 254; *Doolittle* v. *Cook*, 75 id. 354; *Tunison* v. *Chamblin*, 88 id. 388.

A plaintiff in ejectment must recover on the strength of his own title, and must have such an estate as to entitle him to the present possession of the land. *Marshall* v. *Barr*, 35 Ill. 106.

An outstanding title in a third person, superior to that of the plaintiff, is sufficient to defeat a recovery in ejectment, although there be no connection of that title with defendant. *Ballance* v. *Flood*, 52 Ill. 49.

The defendant may, though a trespasser, show title out of the plaintiff, in order to defeat the suit. *Hulick* v. *Scovil*, 4 Gilm. 159.

A party need not have his land inclosed before he can be said to be in the actual possession thereof. Use of the land is sufficient, or actual occupancy of a part under a deed. The deed will enlarge the possession to all the land it includes, and possession for twenty years of a part constitutes title to the whole. *Austin* v. *Rust*, 73 Ill. 491; *Fairman* v. *Beal*, 14 id. 244.

There is no limitation in the charter of the Jacksonville and Carrollton Railroad Company as to donations to it for corporate purposes. There is nothing in the evidence to show that the whole of this ground is not absolutely necessary, either now or at some future time, for "depot and right of way purposes."

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This suit was commenced in ejectment by Connor Carmody, against the Chicago and Alton Railroad Company and others, and as originally brought it was to recover a strip of land two hundred and fifty feet wide by twelve hundred and twenty-one feet, which the half section line running north and south through section 23 divided in equal parts, making a strip one hundred and twenty-five feet wide by twelve hundred and twenty-one feet long, on each side of the half section line. At the trial at the special December term, 1883, plaintiff dismissed his suit as to two of defendants, and by leave of court struck out of his declaration all that portion of the land lying west of the half section line, so the litigation now concerns that strip of land described in the declaration as lying east of such line. Plaintiff, by his declaration, claimed the land in fee simple, and on the trial of the cause made oath that he claimed title through a common source with defendants,—that is, from William R. Davis, deceased. No question is made as to the ownership in Davis, in his lifetime, of the south-west quarter of the north-east quarter, and the north-west quarter of the south-east quarter, of section 23, in which the land in controversy is situated. Plaintiff claims the land by purchase from one of the heirs of William R. Davis, and the defendant railroad company insists upon, as a defence, a deed of release from Davis to the Jacksonville and Carrollton Railroad Company, made on the 7th day of January, 1857, and by actual possession for a period of more than twenty years.

The point made that plaintiff has shown no title in himself, seems to be well taken, and certainly not as to the extent of the title claimed. The title plaintiff insists upon, he acquired by deed from Luella V. Davis, one of the heirs of William R. Davis, deceased, who was the original owner in fee of the land. At his death, which occurred on the 18th day of No-

vember, 1875, William R. Davis left only two heirs to his estate, namely, Robert A. Davis and Luella V. Davis, and as he died intestate, whatever estate he left, vested in his two surviving children.    Robert A. Davis afterwards married, but died without leaving any child or descendants of any child, and hence his interest in his father's real estate went to his surviving widow, Annie Davis, and his sister, Luella V. Davis. After the death of her husband, Annie Davis filed a petition for partition and dower in his estate which he had inherited from his deceased father.    It will be seen the petition, among other lands, asked for dower in and partition of the south part of the south-west quarter of the north-east quarter, containing $39\frac{79}{100}$ acres, and a part of the north-west quarter of the south-east quarter, containing $38\frac{49}{100}$ acres, "being the whole of the last described tract, one $\frac{5}{100}$ acres conveyed to the railroad," all in section 23.    Evidently the word "except" was inadvertently omitted before the "one $\frac{5}{100}$ acres," for in the decree which directs partition to be made it reads "except one and $\frac{5}{100}$ acres."    The Chicago and Alton Railroad Company was then in the actual possession of the land now in dispute, but it was not made a party to the partition proceeding.    It must have been omitted because the land it had in possession was not embraced in the petition for partition, and was not to be affected by the decree to be rendered. The decree expressly excludes all of that portion of the land in controversy situated in the north-west quarter of the south-east quarter, and it is quite evident that portion in the south-west quarter of the north-east quarter is also excluded, because when the commissioners made their report of the division of the estate, they say they have divided the $39\frac{79}{100}$ acres situated in the south-west quarter of the north-east quarter.    In that respect they followed the petition and decree.    It is plain the "$39\frac{79}{100}$ acres" was not all of the south-west quarter of the north-east quarter, and that portion divided was evidently all of the tract, except the part in the possession

of the defendant railroad company which is now in dispute. It is apparent, then, the commissioners never intended to, and never did, in fact, assign the land comprised in the strip in dispute to Luella V. Davis. A part of it was expressly excepted, and it is plain the remaining portion was not assigned. The fact plaintiff took a deed from Luella V. Davis alone, makes it clear he expected only to get the portion of the estate of her father that had been assigned to her. Indeed, that is the only claim of title now insisted upon. But if his deed embraced the strip in dispute, it is equally clear it was not divided by the commissioners. Luella V. Davis did not have the whole title to convey to plaintiff. Her brother's widow's interest still remained in it. There having been no division of that part of the estate between the heirs of the intestate, it would seem to follow that in no event could plaintiff recover all the land described in his declaration. But this point need not be further considered, as the decision may be placed on the broader and more substantial ground the deed of release made by William R. Davis in 1857, when he was in possession of the land, is a bar to any recovery by his heirs, or any one claiming under or through them. The proof is, Davis, at the time of making the deed of release, resided on the land, and after making the deed he moved his fence to make way for the railroad, and it has stood where he placed it ever since. The owner donated the land for depot ground and right of way, and gave possession to the railroad, which it and its successors have since retained, being a period of more than twenty years. Whether the railroad has permitted the lands to be used for "other purposes" than the same mentioned in the deed of release, is a question that plaintiff can not raise on this record.

There is nothing in the point made that section 1 of the charter of the railroad company confined its right to acquire land to a strip "not exceeding one hundred feet in width."

That section has reference to right of way for a single or double track, and certainly did not forbid the company to acquire more land for depot grounds and side-tracks at stations.

The instructions asked and given at the trial are quite numerous, and without considering them separately, it is sufficient to say no error has intervened in that respect to the prejudice of plaintiff. No other verdict than the one rendered would have been justified by the evidence, and it will not be necessary to inquire whether some slight error may not have occurred in the action of the court in giving and refusing instructions at the trial.

The judgment must be affirmed.

*Judgment affirmed.*