B. B. MOSHER *et al.*

*v.*

STEPHEN ROGERS.

*Filed at Ottawa January 25, 1886.*

1. PLEADING AND EVIDENCE—*of a plea amounting to the general issue.* A plea to an action upon a promissory note that was given for a loan to a certain company for the use of another, that no portion of the money was received by the defendants, and that they signed the note upon the express agreement that the payee (the plaintiff) should procure the signature of a person named, to the same, as a joint maker thereof with the defendants, before the same should become binding as their note, and alleging a failure to obtain the signature of such person to the same: *Held*, as presenting no matter of defence not admissible in evidence under the general issue.

2. PRACTICE—*giving evidence in chief after the case is closed—discretionary.* After the defendants have introduced their defence, and closed, and the plaintiff has closed his evidence in rebuttal, it is discretionary with the court to admit or reject evidence in chief on the part of the defendants, and a decision in that regard can not be assigned for error, and more especially when such evidence is not offered as showing a defence.

3. CONTRACT—*antecedent verbal agreements merged.* In an action upon a note, any verbal agreements between the parties made prior to the giving of the note as to the taking of stock in a company in payment, is inadmissible in evidence to contradict or vary the terms of the note.

4. SAME—*of an option in favor of the holder of a promissory note as to mode of payment—rights of the respective parties to the contract.* A promissory note provided, that should the payee so elect, he might, at any time within six months, by the delivery of the note, receive certain shares of stock in a certain company, with one town lot for each share, to be selected, etc. The payee, within the time, selected the lots, but did not offer to surrender the note, and no tender was made to him of the stock, or of a deed for the lots, which were incumbered: *Held*, that the payee of the note was entitled to recover, in an action on the note, without first offering to surrender the

same. Also, that it was for the defendants to show in defence that the plaintiff had received the benefit of the option, and that electing to receive it was not receiving it.

5. INCUMBRANCE—*whether existing—what amounts to an interest in a mortgage security—a transaction construed.* An association bought lands and platted the same into lots, after which it borrowed $2000, for which a note was given signed by seven parties. The makers of this note, together with J. W. E., had before guaranteed to an enameling company a sum sufficient to put its works in operation, not exceeding $15,000, in order to secure the location of its works at the town where the lots were laid out. Six of the makers of the note had advanced, under the guaranty, $1000 each, and this $6000, with the $2000, was paid to the enameling company, and the association, to secure these sums, made their note to the signers of the $2000 note, and to J. W. E., for $8000, secured by mortgage on their lots. J. W. E. paid nothing on the guaranty: *Held*, that J. W. E. had a substantial interest in the mortgage, he being liable to contribution as to the $8000 paid in discharge of his liability, as one of the guarantors. The mortgage as to him was an indemnity or protection against his liability for contribution. So that, on the question whether the mortgage was a subsisting incumbrance, all the mortgagees, other than J. W. E., having made a release thereof, it was considered that, inasmuch as the latter had not joined in the release, the incumbrance was not removed.

6. PURCHASER—*entitled to premises unincumbered.* If a person bargains for town lots, or agrees to take lots in payment of money loaned, he will be entitled to an unincumbered title, whether so expressed in the contract or not, and he will not be required to take a conveyance subject to any incumbrance.

7. INSTRUCTION—*should be limited to matters as pleaded.* Where a new agreement for the discharge of a note sued on is set up by a special plea, it is error to instruct the jury that unless the plaintiff made another contract embracing or relating to the note, and providing for its surrender by the plaintiff upon terms and conditions which defendants were in condition to fully perform, before and when the suit was brought, to find for the plaintiff. The instruction should be limited to a recovery under the special plea.

8. ERROR WILL NOT ALWAYS REVERSE—*in the giving of instructions.* Although a few instructions given may have been erroneous, yet when many others are given on both sides, properly presenting the law of the case, so that it is evident that the jury were not misled, and the losing party not prejudiced thereby, the judgment will not be reversed.

9. SAME—*ruling upon pleadings.* Where the matter of defence set up in a special plea is admissible under the general issue, which is also pleaded, the sustaining of a demurrer to the special plea can not be assigned for error, as being prejudicial to the defendant.

APPEAL from the Appellate Court for the Second District; —heard in that court on appeal from the Circuit Court of La Salle county; the Hon. GEORGE W. PLEASANTS, Judge, presiding.

Messrs. BULL, STRAWN & RUGER, for the appellants:

The court erred in sustaining the demurrer to the third plea. The delivery of the note was upon a condition that Eddy was to sign the same. Parol evidence is admissible to show the contract on which a note is given or delivered. *Benton* v. *Martin*, 52 N. Y. 570; *Miller* v. *Gambie*, 4 Barb. 146; *State* v. *Peck*, 53 Me. 284.

Parol evidence is admissible to show that the whole of a contract was not reduced to writing, but that it was made with conditions not contained in the written contract. *Baker* v. *Prentiss*, 6 Mass. 433; *Develin* v. *Coleman*, 50 N. Y. 531; *Stricklin* v. *Cunningham*, 58 Ill. 293; *Gridley* v. *Bane*, 57 id. 529; *Young* v. *Ward*, 21 id. 223; *Easter* v. *Minard*, 26 id. 494; *Penny* v. *Graves*, 12 id. 287.

If the plaintiff did make his election to take the lots and stock in discharge of the note, before he could rescind, it was necessary he should have offered to return the note in accordance with its conditions, and demand his lots and stock.

The appellee could not rescind the contract as made, by his election, until the other party was put in default by an offer to perform on his part. *Thomas* v. *Coulter*, 76 Ill. 493; *Daggett* v. *Brown*, 28 id. 493; *Weintz* v. *Hafner*, 78 id. 27; *Myers* v. *Gross*, 59 id. 436.

Appellee knew the condition of the lots when he made his election, and there was no agreement the title should be good. *Fuller* v. *Hubbard*, 6 Cow. 13; *Ellis* v. *Hoskins*, 14 Johns. 363; *Grim* v. *Grim*, 9 Conn. 46.

But if the agreement had been for a perfect title, we have shown our ability to give one.

Messrs. SNOW & STEAD, and Mr. L. W. BREWER, for the appellee:

All conversations and agreements relating to the contract were merged in the note. *Walker* v. *Crawford,* 56 Ill. 448; 1 Greenleaf on Evidence, sec. 275.

A purchaser can not be compelled to take a doubtful title. *Hoyt* v. *Tuxbury,* 70 Ill. 331.

The maker of an absolute note can not show, as against the payee, an oral contemporaneous agreement which makes it payable only on a contingency. *Walker* v. *Crawford,* 56 Ill. 448; 2 Parsons on Notes and Bills, 508; *Neely* v. *Lewis,* 5 Gilm. 31; *Lane* v. *Sharpe,* 3 Scam. 566; *Miller* v. *Wells,* 46 Ill. 46; *Jones* v. *Albee,* 70 id. 32; *Mason* v. *Benton,* 54 id. 350; *Conwell* v. *Railroad Co.* 81 id. 232.

The evidence does not show that appellee elected to take lots and stock for the note. It was incumbent on appellants to show that within the six months named in the note, or at the time it is claimed he elected to take the lots and stock, such lots and stock were in a condition to be transferred to appellee by a good and unincumbered title. *Tyler* v. *Young,* 2 Scam. 444; *Gregory* v. *Scott,* 4 id. 392; *Conway* v. *Case,* 22 Ill. 127; *Hall* v. *Perkins,* 4 Scam. 548; *Slack* v. *McLagan,* 15 Ill. 242.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was an action upon an instrument in writing, signed by the defendants, of which the following is a copy:

"$2000.                    ,    MILLINGTON, ILL., *Dec. 13, 1875.*

"One year after date, for value received, we promise to pay Stephen Rogers, or order, two thousand dollars, with interest at ten per cent. It is further agreed, that should the payee so elect, he may, at any time within six months from date, by the delivery of this note, receive twenty shares of the stock of the Enameling Company of Chicago, now held by the Cit-

29—117 ILL.

izen's Improvement Association of Millington, together with one lot with each share, as now given by said association, said lots to be selected from the lots in said association's addition to Millington not now selected by other subscribers to stock."

The declaration contained a special count upon the instrument, and also the common counts. The general issue and three special pleas were filed. To the first special plea a demurrer was sustained for duplicity. The second special plea set up that plaintiff loaned the sum of money mentioned in the note, to the Citizens' Improvement Association of Millington, for the use of the Enameling Company of Chicago, located at Millington, and that no portion of the money was received by the defendants; that they signed the note upon the express agreement that plaintiff should procure the signature of one J. W. Eddy to the note, as a joint maker with the defendants, before the note should become valid and binding as the note of the defendants, and that plaintiff did not so procure the signature of said Eddy to the note. To this plea a demurrer was sustained. The third special plea was, that said sum of money was paid to and used by the enameling company; that after the note was executed, it was agreed between plaintiff and defendants that if the latter would secure him a position in the enameling company, at a salary of $1500 per year, and would complete the enameling works so plaintiff could enter upon such employment, then plaintiff would take $2000 in the capital stock of the enameling company then held by the improvement association, and one lot with each share of such stock of $100, in satisfaction of the note; that defendants did complete such works and secure plaintiff such position at that salary; that on January 1, 1876, plaintiff entered upon such employment at the salary named, and selected the lots to which he was entitled, and promised to surrender the note; that the lots selected, and stock to the amount of $2000, were set apart and have ever since been

reserved for plaintiff; and that defendants are entitled to have the note surrendered and cancelled. To this plea replications were filed. A trial was had, and plaintiff recovered a verdict, on which judgment was rendered. The judgment was affirmed on appeal to the Appellate Court for the Second District, and the defendants appeal further to this court.

The note sued on was given under the following circumstances: There had been formed, under the general act concerning corporations, an association, not for pecuniary profit, styled the Citizens' Improvement Association of Millington, whose object was primarily to secure the location in Millington of the enameling works of Chicago. The association purchased some lands adjoining Millington, which they platted and laid off into lots. The signers of the note, together with J. W. Eddy, had before guaranteed to the enameling company a sufficient amount to put the works in operation, not to exceed $15,000, in order to secure the location of the works at Millington. Six of the seven signers of the note had advanced, under the guaranty, $1000 each, making $6000. This $6000, together with the $2000 obtained from the plaintiff at the time of giving the note, was all paid out on bills of the enameling company. To secure the payment to them of said sums of $6000 and $2000, the Citizens' Improvement Association, on February 28, 1876, made their note to the defendants and Eddy, such guarantors, for $8000, and executed their mortgage to the defendants and Eddy on a large number of lots, including the lots claimed to have been selected by the plaintiff, except one, to secure the payment of such $8000 note, and the said improvement association also hypothecated to the defendants and Eddy all of the stock held by it in the enameling company, to secure payment of said $8000 note.

It is unnecessary to consider whether the demurrer was rightly sustained to the second plea or not. The matter of the plea might have been given in evidence under the general

issue, and in such case, under the decisions of this court, the sustaining a demurrer to the special plea can not be assigned for error, as it would be of no prejudice to the defendant, he being permitted to give the facts alleged in the plea in evidence under the general issue.

But it is claimed that the court here excluded evidence of what was set up in this plea. The record shows the course of proceeding at the trial to have been this: The plaintiff introduced the note in question in evidence, and rested. The defendants then introduced their defence at great length. Plaintiff then rebutted that case made by defendants. There had not been up to this time one word of evidence as to the alleged agreement by plaintiff to procure Eddy's signature to the note; and then, after plaintiff had thus closed his testimony in rebuttal of the defence, defendants' counsel recalled the witness Biddulph, who had previously given testimony for the defence, and propounded this question: "Will you state what the consideration for that mortgage was?" Objection thereto was sustained, whereupon defendants' counsel made the following offer of proof: "That there was an agreement that in addition to the names that are signed to this contract, or this note, that the same should also be signed by James W. Eddy, and it was expected that James Eddy would have signed this note with the other parties, and that the testimony is not offered for the purpose now of raising any question that might be raised in the plea to which a demurrer has been sustained, but to explain the manner in which James W. Eddy's name is mentioned in the mortgage and not in the note." The rejection of this offer of proof is the exclusion of evidence which is thus complained of. At that stage of the proceedings it was discretionary with the court to admit or reject the testimony, and the exercise of that discretion can not be assigned for error. *Wickenkamp* v. *Wickenkamp,* 77 Ill. 92.

There was another offer of proof by the same witness, covering the same and other matter, as also by another witness who had been previously examined by the defendants, and who had been recalled for the purpose,—and the same answer applies to this offer of proof. And besides, this testimony offered was declaredly for the sole purpose of explaining the manner in which Eddy's name was mentioned in the mortgage.

There is no evidence in the record in support of the allegations of the third special plea, that subsequently to the giving of the note, plaintiff agreed that if the works of the enameling company should be completed, and he secured a position in the employ of the company at a salary of $1500 a year, he would take stock and lots in payment of the note. All agreement of that character shown by the evidence was made at or before the time of giving the note, and verbal, and so could not be received to contradict and vary the terms of the note.

The only real question, then, which is presented for determination, is, whether a defence was made out under the optional privilege given by the note to take lots and stock. There is some objection taken to the exclusion of evidence under this head, which we do not consider well founded, as the offered evidence either went to contradict or vary the terms of the note, or called for mere conclusions. We do not see that there was excluded evidence of any legitimate fact. It is, then, the ruling upon instructions, alone, which is involved.

The evidence tended to show that within the six months from the date of the note the plaintiff selected the lots he was entitled to have thereunder, and they were marked off to him on the books of the improvement association. No deed for the lots or transfer of the stock was ever made or tendered. Under the circumstances of such selection of the lots, defendants contend that it was enough, to make out a defence to the note, that they were ready and willing to convey the lots and transfer the stock, and further, that the defence would be

made out unless the plaintiff had made proof that he had surrendered or offered to surrender the note, and had made a demand for the lots and stock. The position of the plaintiff is, that the stock and lots must have been in a condition to be transferred and conveyed to the plaintiff by a good and unincumbered title.

It is supposed by defendant's counsel, that after selecting the lots the parties were in the situation of vendor and vendee, under a contract for the conveyance of land, where there are concurrent considerations, and there must be performance on one part to call for performance on the other part, and that here it was necessary for plaintiff to have performed on his part by delivery of the note or tender thereof. This, we think, is a mistaking of the situation in this case. The note is an absolute promise to pay $2000. But it gives to the payee, the plaintiff, the option, at any time within six months, by the delivery of the note, to have the stock and lots. The plaintiff is not seeking anything under this optional privilege. He rejects it, and is suing for the money promised. It is the defendants who are setting up a defence under this option. There is no act of performance required on plaintiff's part in order to maintain his suit. It is for defendants to show, in defence, that plaintiff has received the benefit of the option. Electing to receive it is not receiving it. The election, though once made, was by the bringing of this suit subsequently recalled, without any consummation of it.

Respecting the rights of a vendor under an executory contract for the sale of land, it was said by this court in *Tyler* v. *Young*, 2 Scam. 444, "that it is to be laid down as a rule at law, to entitle the vendor to recover the purchase money he must aver in his declaration performance of the contract on his part, or an offer to perform, at the day specified for the performance, and this averment must be supported by proof, unless the tender has been waived by the purchaser; * * * and if the seller is not ready and able to perform his part of

the agreement on that day, the purchaser may elect to consider the contract at an end." Certainly the defendants do not occupy any more favorable position here than that of sellers of the lots and stocks. The consideration, the $2000, had been paid at the time of giving the note. The delivering up of the note was not the consideration, and was but furnishing evidence of the acceptance of the option. The defendants, as before observed, never performed, or offered to perform, by conveying the lots and transferring the stock, nor have they shown an ability thus to perform.

As bearing upon the ability of the defendants to give a good title to the lots and stock, the record shows that some time before any selection by plaintiff of the lots, the Citizens' Improvement Association made a mortgage to the defendants and J. W. Eddy, of all the lots so selected, and also turned over to them all the stock in the enameling company owned by the association, to secure the payment to them of $8000, $2000 of which was the money obtained from the plaintiff. As showing that this mortgage was no incumbrance upon the lots, a power of attorney from the defendants to the witness Potter, authorizing him to release the mortgage, was exhibited at the trial, and Potter testified that he was ready and willing to release the mortgage. And as dispensing with the necessity of any release from Eddy, it is claimed that he had no real interest in the mortgage, although named in it as one of the mortgagees, and named as one of the payees in the $8000 note the mortgage secured, because he did not sign the $2000 note to the plaintiff. Although Eddy did not sign this note, and the other $6000 of the mortgage note was, in fact, paid by the defendants alone, and no part by Eddy, yet, as the $6000 which was paid by defendants, and the $2000 obtained by them from plaintiff, were paid and applied on account and in discharge of a joint guaranty made by the defendants and Eddy of $15,000 to the enameling company for locating their works at Millington, we are of opinion Eddy had a real,

substantial interest in the mortgage. For the sum of $8000 paid on account of the joint guaranty made by himself and seven others, he was liable for contribution of his one-eighth part. Should the mortgage, on foreclosure, prove insufficient for the discharge of this $2000 note to the plaintiff which Eddy did not sign, we do not see why he would not be liable for contribution as guarantor in respect of the deficiency. He was named as one of the persons to whom the mortgage and the mortgage note were made, and we think he had an interest therein as a protection against his liability for contribution in respect of the guaranty,—that his interest as a mortgagee made an incumbrance upon the lots, which the proof showed no offer or readiness and willingness to release. As to right to an unincumbered title, see *Conway* v. *Case,* 22 Ill. 127. It is clearly no answer to say that it is not expressed that there shall be an unincumbered title to the lots. There is no doubt that it was a good title which was contemplated, and that nothing less would satisfy the option in the note.

The instructions, generally, were in conformity with the views we have expressed, and the objections as to the giving, modifying and refusing of instructions we deem to have been sufficiently answered by what has been said, so far as respects instructions which are properly applicable. There are some we do not regard as so applicable, from there being no evidence, or no proper evidence, on which to base them.

From what is thus said of instructions, exception, perhaps, should be made of the first and second instructions given for plaintiff. The first is, in substance, that the jury should find for plaintiff unless the defendants have shown a valid agreement, founded upon a sufficient consideration, that the note should be surrendered by the plaintiff. It is hard to say just what was meant by such an instruction. It is one which should not have been given, not going to enlighten the jury, and may be misleading to them. The second was

to the purport, that unless the plaintiff elected to take stock and lots, "and made another contract embracing or relating to the instrument sued on, and providing for the surrender by the plaintiff, upon terms and conditions which defendants were in condition fully to perform before and when this suit was brought, then the jury will find for the plaintiff," etc. This was somewhat of the character of the first, but more objectionable. It was clearly wrong in requiring the making of another contract. It must have been inadvertently given in making it a condition of all recovery under the declaration, instead of limiting it in effect, to a recovery under the third special plea. Had these been the only instructions, they might have formed ground for reversal; but there were so many other instructions in the case, both on the part of the plaintiff and on the part of the defendants, properly presenting the right of recovery, and unmistakably implying that the defence was made out if the defendants were in a condition to give a good title, unincumbered, to the lots and stock, that we can not think the jury were misled or the defendants prejudiced by the giving of the two objectionable instructions. The jury may have considered them, as they should have done in the exercise of ordinary intelligence, as only applying to the contract set up in the third special plea. To apply them to the contract appearing in the note would be an absurdity.

No substantial error appearing in the record, the judgment must be affirmed.

*Judgment affirmed.*

Mr. CHIEF JUSTICE MULKEY: I express no opinion in this case.