(No. 25813.—

THE TOLEDO, PEORIA AND WESTERN RAILROAD, Appellant, *vs.* EUGENE BROWN *et al.* Appellees.

*Opinion filed Dec. 12, 1940—Rehearing denied February 17, 1941.*

WINSTON, STRAWN & SHAW, (JOHN C. SLADE, GUY A. GLADSON, DUANE T. McNABB, and BRYCE L. HAMILTON, of counsel,) for appellant.

W. S. HORTON, E. E. HORTON, E. BENTLEY HAMILTON, and G. H. PAGE, for appellees.

Mr. CHIEF JUSTICE GUNN delivered the opinion of the court:

The Toledo, Peoria and Western Railroad, appellant, filed its bill for specific performance and damages in the circuit court of Peoria county against Eugene Brown and wife, Deloss S. Brown and wife, the Peoria and Pekin Union Railway Company and others, to compel conveyance of certain real estate upon which it is alleged appellant held a legal option to purchase from the said Browns. Motions to dismiss for want of equity were made by each defendant and sustained by the court. A direct appeal to this court is taken because a freehold is involved.

On January 4, 1929, the Browns entered into a contract with appellant under and by the terms of which they agreed: (a) To sell and convey a tract of land described as parcel "A" for the sum of $147,000; (b) to dedicate a street 60 feet wide to connect parcel "A" with other property (tract "B"), upon which appellant had the option hereinafter mentioned; (c) grants appellant the option for six months to purchase a strip of land 40 feet wide and 547.66 feet long, subject to an option in favor of the Caterpillar Tractor Company; (d) covenants that out of certain other real estate (parcel "B") "they will not sell to any railroad company during the next five years following the date of this agreement a strip of land which would prevent party of the second part [appellant] from gaining access for railroad purposes to the property lying within the boundary last above described; provided, however, that in the event an offer, which is acceptable to the party of the first part [Browns] is made during said five years to the party of the first part for the purchase of the entire described tract in the boundaries last above described, then and in that event the party of the first part shall have the right to sell said entire tract of ground, unless said offer is made by the Peoria and Pekin Union Railway Company, in which event the first party will not sell said tract of ground to said

Peoria and Pekin Union Railway Company until the party of the first part shall have first given to the party of the second part fifteen-days' notice, in writing, addressed to it at its general offices, of having received said offer, whereupon said party of the second part may, within said time limit, duplicate said offer and purchase the said tract last above described. If, within said limit of fifteen days after the date of said notice, as aforesaid, party of the second part has not notified said first party of its election to purchase in accordance with such offer, then party of the first part may complete the transaction with the maker of the original offer as aforesaid." There are other provisions in the contract not material to the questions involved herein.

The complaint alleges that appellant paid in full for said tract "A;" that appellees the Browns did not dedicate the 60-foot strip, and that in breach of their covenants the said Browns conveyed through different grantees tract "B," upon which appellant held an option, to a trustee for the benefit of the Peoria and Pekin Union Railway Company, without giving appellant notice of the price offered and an opportunity to pay the same amount for said property.

The complaint further alleges the said conveyances were made to individuals shortly after the contract was made, with the intent to conceal the fact that it was ultimately for the benefit of the Peoria and Pekin Union Railway Company; that the latter knew of the terms of the contract held by appellant, and that appellees caused the conveyances to be made to individuals and trustees to conceal the fact that the Peoria and Pekin Union Railway Company was the real purchaser, and although the first deed made by appellees was within a few months of the execution of appellant's contract, it did not learn of the true nature of the transaction until shortly before the suit was filed in this case.

Appellant, in its complaint, offers to pay the amount paid by the Peoria and Pekin Union Railway Company, when disclosed, and prays for specific performance and for damages

caused to the first purchased tract for failure to convey the second tract, and an alleged failure to dedicate the 60-foot street. The motions to dismiss, based in part upon what the complaint does allege, and in part upon what the complaint also fails to allege, raise the following propositions: (1) The purchase of said tract of land is *ultra vires* the powers of appellant; (2) it does not appear in the complaint that appellant had obtained a certificate of convenience and necessity from the Illinois Commerce Commission to acquire said tract of land; (3) that the provisions of said contract are against public policy because they tend to create a restriction upon the right of another common carrier to use a part of the property involved; (4) that the option had expired by lapse of time, and, in any event, there had been no proper acceptance thereof.

Appellant is organized under the general Railroad act (Ill. Rev. Stat. 1939, chap. 114) and paragraph 20 thereof defines the powers such railroad may exercise. The pertinent part of this paragraph reads as follows: "Third: To purchase, hold, and use all such real estate and other property as may be necessary for the construction and use of its railway, and the stations and other accommodations necessary to accomplish the object of its incorporation." "Fourth: To lay out its road, not exceeding one hundred feet in width, and to construct the same; and for the purpose of cuttings and embankments, to *take* as much more land as may be necessary for the proper construction and security of the railway," etc.

It will be noted that the two clauses set out in this statute provide in one instance, for the purchase of real estate, and in the other, for the taking of real estate, and the first subdivision contemplates that real estate may be purchased for the *construction* of the railway and for the *use* of the railway. In *Carmody* v. *Chicago and Alton Railroad Co.* 111 Ill. 69, it was held that the charter for a railroad did not limit its right to acquire land to a strip one hundred feet

in width, and did not forbid the railroad company from acquiring lands for depot grounds, side-tracks and stations. In *Chicago, Burlington and Quincy Railroad Co. v. Wilson,* 17 Ill. 123, the court said: "We cannot suppose that it was the intention of the legislature to oblige the company to acquire all the land, in the first instance, which, in any event, it should ever want, to do the largest amount of business it may ever hope to attain." The method by which land may be acquired by a railroad is not limited but may be by "purchase," or "taking." (Ill. Rev. Stat. 1939, chap. 114, par. 20, *supra.*) The acquisition of land by railroads is limited to the purposes necessary to accomplish the object of their incorporation, and constitute such a variety of uses as change in circumstances may bring about; it depends upon the facts in each case, but, if reasonably necessary, is generally upheld. (*Marsh* v. *Fairbury, Pontiac and Northwestern Railway Co.* 64 Ill. 414; *Chicago and Northwestern Railway Co.* v. *Mechanics' Institute,* 239 id. 197; *Dickman* v. *Madison County Light Co.* 304 id. 470.) Indeed the language of the statute authorizes the purchase of real estate necessary for the construction of a railroad and necessary for the use of the railroad. It seems clear that the legislature contemplated that land might be necessary upon which a railroad was not actually constructed, but which would be necessary for its use, and expressly permitted it to be acquired by purchase.

The point made in the motions to dismiss is that it is not affirmatively shown in the complaint that plaintiff had a right to acquire this land, but the cases cited to sustain this proposition all arise in causes where the right of eminent domain was being questioned. In *Chicago, Burlington and Quincy Railroad Co.* v. *City of Chicago,* 149 Ill. 457, the question arose upon a condemnation suit brought by the city to acquire land for a street across the tracks, and the railroad attempted to prove the sale value of the land taken based upon the uses that might be put to like land by an

ordinary owner, and, with respect to this question, the court quite properly held that the only use to which a railroad could put its land was railroad purposes. The same question was involved in *Chicago and Northwestern Railway Co.* v. *Town of Cicero,* 157 Ill. 48. The case of *South Park Comrs.* v. *Montgomery Ward & Co.* 248 Ill. 299, did not involve a railroad company, and what was said was merely by way of analogy and is not in conflict with the general rule. The case of *Case* v. *Kelly,* 133 U. S. 21, 33 L. ed. 513, turned upon the question of whether, under the laws of Wisconsin, there was granted authority for contribution to aid in the construction of a railroad, and had no bearing upon the question as to whether authority to acquire land by purchase must appear in the complaint. Inasmuch as the statute authorizes a railroad to purchase such land as may be necessary for the *use* of its railway, and there is a presumption that a railroad corporation acts within its charter powers (*Ohio and Mississippi Railway Co.* v. *McCarthy,* 96 U. S. 258, 24 L. ed. 693; *McIntire* v. *Preston,* 5 Gilm. 48; 2 Fletcher on Corporations, p. 1786;) we are of the opinion this question cannot be raised by motion to dismiss.

The Public Utilities act (Ill. Rev. Stat. 1939, chap. 111⅔, par. 56) provides: "No public utility shall begin the construction of any new plant, equipment, property or facility which is not in substitution of the existing plant, equipment, property or facility, or an extension thereof, or any addition thereto, unless and until it shall have obtained from the commission a certificate that public convenience and necessity require such construction." Appellees take the position that it is necessary to allege in the complaint that appellant had obtained a certificate of convenience and necessity authorizing it to acquire the land upon which it obtained an option. The cases cited by appellee do not sustain this position. *Frye* v. *Bank of Illinois,* 5 Gilm. 332, contains a comment that when a corporation seeks, in equity, rights

which do not ordinarily belong to it, power must be alleged. The point in that case was raised by answer, but the court held that by alleging complainant was a bank the court could assume it had the power to loan money, but this would not necessarily apply to an insurance company. In *Chicago, Burlington and Quincy Railroad Co. v. Cavanagh,* 278 Ill. 609, the court specifically held that the fact the petitioner alleged it was a railroad company was sufficient to show it was a public utility, and that the burden was upon the owner to show, as a defense, that the right of eminent domain was being exercised for a private instead of a public purpose. The cases of *Public Service Co. v. Recktenwald,* 290 Ill. 314, and *Stephens v. Chicago, Burlington and Quincy Railroad Co.* 303 id. 49, only discuss what is necessary to enable a corporation to exercise the right of eminent domain. None of these cases hold that it is necessary to allege in the petition or complaint that a certificate of convenience and necessity had been procured authorizing it to purchase land. Indeed the very language of the statute seems to limit the requirement of the certificate to those cases in which the utility contemplates the construction of a plant, equipment or facility, or an extension or addition thereto.

In *People v. Peoria and Pekin Union Railway Co.* 273 Ill. 440, this court held that the Commerce Commission had no power to adjudicate controverted rights growing out of contracts of public utilities, as the effect of a contract was a judicial question. This holding was approved in *Midland Bus Co. v. Transportation Co.* 336 Ill. 616. The Commerce Commission has no jurisdiction or right to pass upon the effect of the contract here involved.

It is also claimed that the contract between the appellant and the Browns is void as against public policy because it is in partial restraint of trade, and, as applied to corporations engaged in a public business in which all of the public is interested, is unlawful. There seems to be no doubt but that an agreement, which, by its terms, gives the exclusive

right to a railroad corporation in or through a certain tract of land, in so far as it attempts to exclude other railroad corporations from acquiring a right of way over the same upon land not appropriated, or required for its use by the company, is against public policy and void. (1 Elliott on Railroads, (3rd. ed.) sec. 443.) This principle has been followed in many cases. *St. Louis and Cairo Railroad Co.* v. *Postal Telegraph Co.* 173 Ill. 508; *Union Trust and Savings Bank* v. *Kinloch Long Distance Telephone Co.* 258 id. 202; *Craft* v. *McConoughy,* 79 id. 346.

The question in this case is not whether this principle of law exists, but whether it applies to the contract in question, and especially upon motions to dismiss which admit all of the matters properly pleaded in the complaint. The first part of the contract on this point to which exception is taken, is that "they will not sell to any railroad company during the next five years, * * * a strip of land which would *prevent the party of the second part from gaining access for railroad purposes to the property,"* etc. This covenant does not give to appellant an exclusive right to the strip of ground, but, on the contrary, prevents any other railroad corporation from getting an exclusive right to a strip which would prevent appellant from using tract "B" for railroad purposes. The cases cited in the brief of appellee all contain provisions which absolutely excluded other railroad companies from the land. Thus, in *Bald Eagle Val. R. Co.* v. *Nittany Val. R. Co.* 33 Atl. (Pa.) 239, the covenant was to give all of the business to a certain railroad and "would not aid or encourage in any manner in the construction. of competitive lines of railroad." In *Calor Oil and Gas Co.* v. *Franzell,* 109 S. W. (Ky.) 328, the grantor gave the "exclusive right and privilege of laying pipe and pipe lines * * * in, or upon said land." In *Central New York Telephone Co.* v. *Averill,* 199 N. Y. 128, 92 N. E. 206, the contract contained a covenant that a telephone exchange would not be used in connection with any

other telephone exchange in St. Louis. In *St. Louis and Cairo Railroad Co.* v. *Postal Telegraph Co. supra,* the contract involved gave the exclusive right to certain ground to one telegraph company. In *Union Trust and Savings Bank* v. *Kinloch Long Distance Telephone Co. supra,* a license to use certain poles and switchboards was granted, with the condition that no connection with any other line would be given or allowed to be given under penalty of forfeiture. It will thus be seen that the controlling feature in each of these cases was the exclusive use granted, and necessarily excluding any other public utility from the use of the premises to a presumptive disadvantage of the public. We cannot say from the face of the complaint that such a result would necessarily follow from the contract involved. Certain arguments and conclusions as to this being the necessary result appear in the motions, but still, under this provision of the contract, appellant was merely guarding its right to gain access to the land, and would not thereby exclude any other public utility from gaining like access to the land. Appellant was not restraining another utility from access to the land in case it was sold to an individual, but, on the contrary, was attempting to prevent itself from being excluded from the land.

With respect to the second part of the same clause in the contract objected to, the argument is that the contract contains a covenant that it will not sell tract "B" to the Peoria and Pekin Union Railway Company. This, however, does not appear to be the necessary purport of this covenant. Appellees the Browns had the right to sell this tract of land at any time. The option which appellant obtained was a right to purchase in case the Peoria and Pekin Union Railway Company offered to purchase. It is apparent, as long as tract "B" was unsold, the covenant not to sell a strip of land completely excluding it was sufficient to give appellant access to the balance of the property, but if a railroad company became interested in buying the whole

property the only means of protection was to reserve a right to acquire the same property. If it be conceded that each of these railroad companies had the right to buy the same tract of land, and acquire title thereto, it does not necessarily follow that an option obtained to buy a tract at the same price offered by another railroad is necessarily a contract to exclude such second railroad from use of the premises, any more than ownership acquired in any lawful manner would do so.

Appellant alleges in its complaint that it did not take the option on tract "B" with the purpose or intention of excluding the Peoria and Pekin Union Railway Company from gaining access to other industries in the neighborhood, and that other means of access actually existed. To come within the principle of the cases cited by appellees, the contract or option must have contained a covenant that appellant, if it did acquire the property, should have its exclusive use, or such intent must have properly appeared in some other manner. If the principle sought to be applied by appellees were to prevail, a railroad, in purchasing any tract of land, whether near industrial activity or otherwise, would be subject to have an ordinary contract of purchase invalidated if it could be later shown that another utility could profitably use the same property. We have no way of knowing what the answer may disclose, but taking the complaint, with all of the reasonable intendments that may be drawn from its language, there is nothing to show appellant secured its option to purchase tract "B" with an understanding that when acquired it would be exclusive. All of the cases called to our attention are those by which a covenant in the transfer of the property burdened the utility with the obligation or right to exclude other competing companies or utilities. A purchase by a railroad company of land desired by another, does not come within the rule, and no authority has been cited that an option to purchase has any greater effect.

Appellees claim, also, that the plaintiff is barred from bringing suit because the option had expired by lapse of time. The contract provides plaintiff had the option only in case the Peoria and Pekin Union Railway Company made an offer to purchase tract "B" within the period of five years, but if such offer was made it was entitled to purchase within fifteen days after notice, in writing, was given plaintiff of such offer, and the amount thereof. Under the contract appellees agreed not to sell until fifteen-days' notice had been given. The allegations of the complaint are that the title to the property stood in the name of individuals, and that plaintiff had only learned shortly before suit was filed that there was a secret trust by which the Peoria and Pekin Union Railway Company had become the purchaser, and that no notice had been given appellant, as required by the contract.

The rule is that where a contract expressly provides for notice, before liability accrues, the period of limitation fixed by statute within which to bring action will not commence until such notice is given, according to the requirements of the contract. (37 Corpus Juris, sec. 347, p. 968; *Hall* v. *Roberts,* 12 N. Y. Supp. 480; *Cobb* v. *First Nat. Bank,* 42 S. W. 770.) The principle has been recognized in this State where we held that an action does not accrue on a certificate of deposit in a bank, until demand is made. (*Emerson* v. *North American Transportation Co.* 303 Ill. 282.) And in *MacAndrews & Forbes Co.* v. *Mechanical Manf. Co.* 367 Ill. 288, it is said the Statute of Limitations is not a bar to an action for breach of contract where the suit is brought within the statutory period, after the rights of the parties have become fixed.

In answer to this it is said that the deeds of conveyance were on record, but they were deeds to individuals and not to the railway company. The fact that the Peoria and Pekin Union Railway Company had a switch over a part of tract "B" is met by the complaint stating that the original

owners were in the open possession of tract "B," and so far as the record disclosed the ownership of land occupied by the track was not shown in the railway company, and might, consistent with the record, be owned by one of the nearby industries, or be located on the ground subject to the option granted appellant.

The complaint also claims damages for breach of covenant, and if a breach is shown the action would not be barred until the lapse of the ten-years' Statute of Limitations on written contracts. Appellee also asserts there is no proper acceptance of the option. Appellant never has received notice of the amount which was offered or bid for tract "B." In the complaint appellant does offer to pay the amount offered by the Peoria and Pekin Union Railway Company when disclosed by appellees, and the effect of this offer is not destroyed by the prayer to compel merchantable title to be conveyed. An executory agreement to sell or convey real estate requires delivery to purchaser of an unencumbered, fee simple title, unless a less estate is specified in the agreement. (*Mosher* v. *Rogers,* 117 Ill. 446; *Woodruff* v. *Thorne,* 49 id. 88; 29 Am. & Eng. Ency. of Law, 606.) If the prayer is too broad, appellant's relief will be limited to the terms of its contract.

This case comes before us upon the motions to dismiss. The motions to dismiss admit all matters well pleaded. The presumption against the pleader does not require that the words of the pleading should be wrested to disregard the obvious meaning of the language used. (*Peabody* v. *Forest Preserve District,* 320 Ill. 454.) Section 42, sub-section 2 of the Civil Practice act provides that no pleading shall be deemed bad in substance which shall contain such information as shall reasonably inform the opposite party of the nature of the claim or defense which he is called to meet. Section 43, sub-section 4 of the act also provides: "The facts constituting any affirmative defense, such as * * * estoppel, *laches,* * * * illegality * * * that an in-

strument or transaction cannot be recovered upon by reason of any statute * * * must be plainly set forth in the answer or reply." The motions to dismiss in this case were not verified—consequently they only reach defects appearing upon the face of the complaint as provided in section 48 of the Civil Practice act.

It is also urged that the complaint for damages is insufficient and involves the recovery of speculative profits. The complaint asks damages to tract "A" because of an alleged failure to dedicate the 60-foot street, and claims that tract "A" is now, and was at the time of the contract, worth less than it was in connection with the right to have a street across the railroads to tract "B." This would constitute an issue of fact which cannot be raised upon a motion to dismiss. There is also a claim for damages as to prospective profits, but since the sufficiency of this claim could have been questioned upon a motion directed to that particular part of the complaint, the failure to do so does not justify dismissal as to the part upon which a proper issue may be formed.

Section 4 of the Civil Practice act provides that it shall be liberally construed, so that controversies may be determined according to the substantive rights of the parties, and that it shall not be strictly construed as a statute in derogation of the common law. There was a sufficient statement of facts in the complaint to require an answer upon the part of the defendants.

The judgment of the circuit court is reversed and the cause remanded, with directions to overrule the motions to dismiss and to permit the appellees, if they see fit, to answer the complaint.

*Reversed and remanded, with directions.*

Mr. JUSTICE STONE, dissenting.