# CASES ARGUED AND DETERMINED

## IN THE

# SUPREME COURT OF MISSISSIPPI

### AT THE

## SEPTEMBER TERM, 1924.

WEIR *et al. v.* STANDARD OIL Co. *et al.**

(Division B. May 26, 1924. Suggestion of Error Overruled Sept. 15, 1924.)

[101 So. 290. No. 24100.]

RAILROADS. *Letting part of right of way and depot grounds to oil company held not misuse of easement.*

The letting by a railroad company of a part of its right of way and depot grounds to an oil company, and the erection thereon of oil tanks and other facilities for the handling of oil transported by the railroad, reasonably tends to facilitate its business of transporting oil, and does not constitute such a misuse of the easement acquired in the land as will entitle the owner of the fee to complain.

*Headnote 1. Railroads, 33 Cyc, p. 186.

APPEAL from chancery court of Hancock county.
HON. V. A. GRIFFITH, Chancellor.
Bill by Fannie B. Weir and others against the Standard Oil Company and others. From a decree dismissing the bill, plaintiffs appeal. Affirmed.

*R. L. Genin,* for appellants.

(205)

The land in suit is far away from the first location and fenced in with permanent fence all to itself and on the extreme outer edge and is a part of the land taken and held by the railroad company for railroad purposes under the expropriation proceedings. The Standard Oil Company has taken this land under the above lease, placed a fence around it, constructed several large tanks, building, including warehouse, garage in which is kept tank-wagons, stable in which mules are kept, and enclosure for mules to pasture, and assumed sole and uninterrupted enjoyment of the land sued for. There are no track, tools, material or anything else belonging to, or in any way used by the railroad company for railroad purposes on this land. The oil and gasoline of the Standard Oil Company received over the railroad is placed in tank cars at the end of a switch track over two hundred feet distant from this land and on the opposite side of one of the city's most popular highways. From the end of this switch track there are pipe lines constructed underground by the Standard Oil Company under the street and ditches over two hundred feet away to the land and to the tanks of the oil company.

The appellants claim that because of the permanency of the buildings, pipe lines, etc., of the Standard Oil Company, the land has been abandoned by the Railroad Company for railroad purposes and reverted to them and they are entitled to a reasonable rent or compensation from the Standard Oil Company and proved without contradiction that a reasonable rent was forty dollars per month.

The learned chancellor held that the land used by the Standard Oil Company is used in the same way all over the country and the question never having been raised before, the use must be that use incidental to railroad purposes.

In other words, the entire world, including the railroad company, is excluded from this strip of land, which land was taken by the railroad company from the ap-

pellants' father and mother, under the authority of our laws and constitution for public use and delivered over to the Standard Oil Company without payment to any one for the exclusive use and enjoyment of the oil company for their private gain.

The courts of the country universally hold that if the use now is of a different general character from the original use, the public easement is lost. 10 R. C. L. 202; 20 C. J. 1229 and 1234, and cases there cited; *Neitzel* v. *Spokane International Railway Co.* (Wash.), 36 L. R. A. 522; *Lorick & Lowrance* v. *Southern Railway Co.*, 68 S. E. 931, 87 S. C. 71; *Belcher Sugar & Refining Co.* v. *St. Louis Grain Co.*, 101 Mo. 192, 13 S. W. 822, 8 L. R. A. 801; *Southern Railway Co.* v. *Beaudrot,* 41 S. E. 299, 63 S. C. 266; *The Missouri K. & T. Railroad Co. of Texas* v. *Anderson,* 81 S. W. 781, 36 Texas Civ. App. 120; *Missouri, K. & T. R. R. Co. of Texas* v. *Mott,* 81 S. W. 285, 98 Texas 91, 70 L. R. A. 579; *Hill et al.* v. *Woodward, et al.,* 57 Miss. 297.

We have been unable to find any case of an oil company using the land taken by a railroad company for its private use, but the case of the wholesale grocery above referred to, and the case of *Postal Tel. Cable Co.* v. *G. & S. I. Railroad Co.,* (Miss.) 70 So. 833, we believe conclusive on this question. Our supreme court has held that the placing of a telegraph wire on a telephone pole is an additional servitude for which the owner is entitled to damages. See also *Locks & Canals on Merrimac River* v. *Nashua & L. R. Co.,* 104 Mass. 1, 6 Am. Dec. 181.

The authorities hereinafter set out hold the following uses were additional servitude upon the land: *Cosgriff* v. *Tri-State Telephone, etc., Co.,* 15 N. D. 210. The laying of a pipe line along a rural highway amounts to the imposition of a servitude upon the fee additional to that embraced in the easement for highway purposes and that the abutting owner is entitled to compensation. *Consumers Gas Trust Co.* v. *Huntsinger,* 14 Ind. App. 155-166, 42 N. E. 640, 39 N. E. 423; *Huffman* v. *State,* 21 Ind.

App. 449, 52 N. E. 713; *Ward* v. *Triple State Natural Gas Co.,* 115 Ky. 723, 74 S. W. 709; *Sterling's Appeal,* III Pa. St. 35, 2 Atl. 105; *Murry* v. *Gibson,* 21 Ill. App. 488.

Our supreme court has repeatedly held that the owner of the fee is entitled to additional compensation where property was condemned for a street and the street used for additional purpose, such as railroads. *Slaughter* v. *Meridian Light & Railway Co.,* 95 Miss. 251, 48 So. 6, 25 L. R. A. (N. S.); *Theobald* v. *Railway Company,* 66 Miss. 279, 6 So. 230, *Ala. & C. R. R. Co.* v. *Bloom,* 71 Miss. 247, 15 So. 72.

*T. M. Evans,* for appellant.

We submit that the lease from the Louisville & Nashville Railroad Company to the Standard Oil Company is not for a similar purpose for which the land was acquired by condemnation proceedings; it is not a similar use to that of the railroad company, but it is a different use which is inconsistent with the purpose for which the right was acquired by the railroad company. It is well-established law that a railroad company acquires no title in fee-simple to land by expropriation proceedings, but that the railroad company is limited to easement rights.

The basic principle here is whether or not the location of the Standard Oil Station and oil tanks upon the property in question are indispensable to the operation of the business of the Louisville & Nashville Railroad Company. The Louisville & Nashville Railroad Company has a right to use the property taken under expropriation proceedings and apply it to any use that is indispensable to facilitate the fulfillment of the objects of its incorporation required for the convenient, safe, and successful conduct of its business, and the running of its trains. It is perfectly evident from the facts in this case that such is not the case.

The construction of a telegraph and telephone line on a railroad company's right of way imposes an addi-

tional servitude or burden on the land, for which the owners are entitled to compensation, unless it is constructed by the railroad company in good faith, for its own use and benefit in the operation of the road and to facilitate its business. *Am. Tel. & Tel. Co. of Baltimore* v. *Geo. A. Smith,* 71 Md. 536, and nine other cases; 7 L R. A. 201-205; Lewis on Eminent Domain, sec. 141; Mills on Eminent Domain, sec. 59; *Phillips* v. *Postal Tel. & Cable Co.,* 130 N. C. 513, 89 Am. St. Rep. 869.

*Effect of Abandonment—Change of Use.* When property taken under expropriation proceedings has been abandoned or put to another use, the easement ceases. When, however, only an easement has been acquired for the public use, either by condemnation, purchase, prescription, or dedication, if the use for which the land was taken is formally discontinued or permanently abandoned, in fact, or becomes impossible, or the land so devoted to a different and inconsistent use, the easement expires and the owner of the fee holds the land free from incumbrance. In any such event the right to possession does not remain in the condemning party, but reverts to the owner of the fee. *Barclay* v. *Howell,* 8 L. Ed. 512; *Harris et al.* v. *Elliott* (U. S.), 9 L. Ed. 333, 335; *Skilman* v. *Chicago, Milwaukee & St. Paul R. R. Co.,* 16 Am. St. Rep. 452, 455; *Rowzee* v. *Pierce,* 75 Miss. 853, 862; *Platt et al.* v. *Pennsylvania R. R. Co.,* 22 Am. & Eng. Cases, 129, 146; *Giesy* v. *Railroad Co.,* 4 Ohio St. 420, 428. See, also, *Imlay* v. *Union Branch R. R. Co.,* 26 Conn. 249, 68 Am. Dec. 392, 398; *Pac. Railway Co.* v. *Seely,* 45 Mo. 212, 100 Am. Dec. 369, 376; *Lance's Appeal,* 55 Pa. St. 16, 93 Am. Dec. 722, 730; *Ligarre* v. *City of Chicago,* 32 Am. St. Rep. 179, 191; *Query* v. *Postal Tel. & Cable Co.,* 178 N. C. 639, 8 A. L. R. 1290 to 1293, and notes; *Western Union Tel. Co.* v. *Rich,* 19 Kan. 1517, 27 A. L, R. 159; *Canadian Pacific R. Co.* v. *Moosehead Tel. Co.,* 106 Me. 363, 29 L. R. A. 703; *American Tel. & Tel. Co.* v. *Pierce,* 71 Md. 535; *St. Louis, I. M. & S. R. Co.* v. *Cape Giradeau Bell Tel. Co.,* 134

Mo. App. 406; *Nicoll* v. *N. Y. & N. J. Tel. Co.,* 62 N. J. 733, Am. St. Rep. 666; *Teeter* v. *Postal Tel. Co.,* 172 N. C. 783; *Hodges* v. *Western Union Tel. Co.,* 133 N. C. 225.

We submit that under the law and facts in this case, we are entitled to have the decree of the chancellor reversed; and on the evidence of the witnesses for the defendant, we are entitled to have a judgment entered declaring that the Louisville & Nashville Railroad Company has abandoned the use of said land for railroad purposes in converting it to use other than railroad purposes, and, therefore, the easement acquired under the condemnation proceedings has been forfeited; and that the appellants are entitled to said property not only in fee-simple, but free from all claims of right or possession by said Louisville & Nashville Railroad Company or the Standard Oil Company, and to have judgment entered for the complainants.

*Smith, Young, Leigh & Johnston,* for appellees.

*The Leasing of the Property by the Railroad to the Standard Oil Company Clearly Constitutes a Use of the Property for Depot and Railway Purposes.*

If the court is of the opinion that the complainants have proven a fee-simple title to the property in themselves, and that the railroad company's title is limited to a right to use the property for depot and railway purposes only, then it is clear that the use to which the property is put by the Standard Oil Company is clearly within the limitation. Oil, of course, is somewhat different from other commodities. It is transported in large tanks, and in order to be efficiently handled, it must be unloaded into tanks. It would be expensive and cumbersome to handle it in small drums. An oil company in order to efficiently handle the oil shipped to it by rail must necessarily have storage tanks into which it can pipe its oil directly from the railroad tracks.

In this instance, the evidence shows that all of the oil shipped by the Standard Oil Company at Bay St.

Louis is transported over the Louisville & Nashville
Railroad Company, so that it is necessary to unload all
of the oil shipped to the Standard Oil Company at Bay
St. Louis from the tracks of the Louisville & Nashville
Railroad Company. To facilitate the business of the
railroad company and of the Standard Oil Company, it
is essential to have the tanks in close proximity to the
tracks of the railroad. The complainants contend that
the Standard Oil Company could run a pipe to the rail-
road company's property, and pipe the oil to a distant
point where the tanks might be located. This presumes,
of course, that the oil company could obtain a location
which it could reach with its pipes. There is no evidence
to show that the oil company could obtain a right-of-way
for the laying of its pipes over the necessary property
in order to reach its tanks at a distant location. From
aught that appears, it is probably impossible for the
Standard Oil Company to secure another location to
which it could pipe oil from the railroad. Furthermore,
if, under the contention of the complainants, the building
of oil tanks on the property constitutes an additional
servitude on the property, then the complainants could
equally as well contend that the building of an oil pipe
line across the property would also constitute an addi-
tional servitude, and thereby absolutely prevent the
railroad company from connecting its delivery tracks
by pipe with the storage tanks of the Standard Oil Com-
pany. If the complainants have such rights, they can
practically prevent the railroad company from using its
property to facilitate its business with the Standard Oil
Company, and thereby deprive it from using the prop-
erty for its most essential depot use.

Many uses not nearly so essential for the advancement
of the railroad's business have been held to be legitimate
railroad uses. A very complete brief upon this subject
will be found in 36 L. R. A. (N. S.) 512, 522. It has been
held that coal yards and sheds are proper depot uses, and
that elevators on the property constitute proper depot

use; also lumber yards, hotels and boarding houses, as well as stock yards and bins have been sanctioned. *Nitzel ,*v. *Spokane International Railroad Company,* 141 Pac. 186, holds that a use of property for wholesale grocery business is a depot use. *Coit* v. *Oenby-Wofford Co.,* 81 S. E. 1067, held that a warehouse built on the property by a wholesale grocery company was proper. See, also, *Hohl* v. *Iona Central Railroad Co.,* 143 N. W. 850; 2 Elliott on Railroads, sec. 1170.

It seems to us that the use of the property for the construction of oil tanks and the transportation of the oil from the tanks is even more necessary for railroad purposes than the use of the property for lumber yards, coal yards, etc.

*T. M. Evans* and *Robert L. Genin,* for appellants, in reply.

The question is not as to the convenience of the Standard Oil Company, or other company receiving goods, but whether or not the use to which this land is being put is for railroad purposes. It is not a place for storing gasoline or oil to be removed by the railroad over its tracks and lines of road, neither is it a question of a place to store gasoline and oil pending the delivery to the consignee; but the evidence in this case shows conclusively that the railroad company has finished and completed its contract when it delivers the gasoline and oil to the Standard Oil Company upon its side track in the tank car at the place from which the gasoline and oil are received by the Standard Oil Company, and pumped to its own station, from which it is delivered by wholesale and retail to the customers of the Standard Oil Company, in Bay St. Louis and the surrounding country, and is also the place where the Standard Oil Company keeps its tracks, mules, wagons, tools, and everything pertaining to its business.

It must be ascertained whether the use to which it is being put is the use of the railroad company or of the Standard Oil Company. The case of the warehouse referred to on page 12 of the appellees' brief, 36 L. R. A. (N. S.) 512, 522, is exactly contrary to this case that is before the court. The case of *Minnie Anderson* v. *Interstate Manufacturing Company,* the Iowa case referred to, was the case of the railroad company permitting the manufacturing company to build a warehouse upon the depot grounds, or right of way for storage of the furnaces manufactured by the Interstate Manufacturing Company, for shipment over the line of the Chicago, Burlington and Quincy Railroad, and, therefore, was for the benefit and convenience of the railroad company, and relieves the railroad company of the burden of building additional warehouses. While in the case before the court, the railroad company, when it delivers a tank car of oil from the side track to the Standard Oil Company, or any other oil company, has finished and completed its undertaking.

No corporation, whether a municipal or private corporation, has been given the power, under our constitution and our law, to condemn and take property by expropriation proceedings, for the use or benefit of any other person or corporation. It is nowhere claimed by either of the defendants of this cause of action, in the proceedings, that the land in controversy is in any way being used by the Louisville & Nashville Railroad Company for railroad purposes. We submit that the L. & N. Railroad Company or any of its predecessors, had a perfect right to fence the entire property acquired under condemnation proceedings, against Alexander Bookter and Emma L. Bookter, and to the exclusive use of all of the said property for railroad purposes, but for railroad purposes only.

Argued orally by *R. L. Genin,* for appellants, and *Harry Smith* for appellees.

COOK, J., delivered the opinion of the court.

The appellants filed their bill of complaint in the chancery court of Hancock county seeking to recover a certain piece of land now fenced and occupied by the Standard Oil Company, all of which is included in a larger piece of land also fenced, and known as the depot grounds of the Louisville & Nashville Railroad Company, and also seeking by their bill to recover rent for the use and occupation of the land by the Standard Oil Company, and from a decree dismissing the bill of complaint, this appeal was prosecuted.

The facts as shown by the record, and as found by the chancellor, are substantially as follows: In 1869 the predecessor of the Louisville & Nashville Railroad Company, by a condemnation proceeding, acquired for a right of way and depot purposes a strip of land six hundred and fifty feet wide in the town of Bay St. Louis. Alexander Bookter, father of the complainants, was the owner of a part of the land condemned, and was a party defendant to that proceeding, and on the 10th day of November, 1870, he also executed a deed conveying to the railroad company a strip of land fifty feet wide on each side of the center of the main line of the railroad as then constructed across the Bookter lands. Subsequently to this, but prior to 1880, the railroad company fenced up a strip four hundred and fifty feet wide covering the whole of the expropriated area except an outside strip of one hundred feet on the north side and on the south side thereof. This strip of four hundred and fifty feet, being two hundred and twenty-five feet on each side of the main line of the railroad, was fenced up by the railroad for its general depot grounds, and there was erected within this enclosure passenger and freight depots, coal bins, and other railroad structures and equipment. Running across these depot grounds, on one side of the strip of land acquired from Bookter by the condemnation proceedings, is a street known as Bookter street, and at the

point where this street enters the depot grounds, as well as at other points, there are openings in the fences for the use of the public in going into and out of the depot grounds. This fence with the necessary openings therein has been maintained by the railroad company from prior to 1880 to the present time, and the lands within the inclosure have been continuously used for general depot and railroad purposes.

On December 2, 1891, the Louisville & Nashville Railroad Company leased to the Standard Oil Company the right to erect within the inclosed depot grounds "an oil warehouse twenty by forty feet, of neat appearance and to be kept painted standard L. & N. color." This lease contract expressly provided that the building should be erected under the supervision and direction of an engineer or superintendent of the railroad company, and that the buildings or improvements would be removed by the oil company within thirty days after receiving notice in writing so to do, and under this lease the Standard Oil Company erected a warehouse within the inclosure and upon that part of it which was formerly owned by the Bookters, the ancestors of these complainants.

On the 30th day of October, 1900, another lease was made with the Standard Oil Company giving it the right to erect, within the inclosure of the depot grounds, structures and inclosures for the handling and storage of oil. A sketch showing the proposed location of the oil structures was included in the lease, and it was expressly provided that the structures should be erected under the direction of an engineer or superintendent of the railroad company; that they should be at least seventy-four feet distant from the center of the main track of the railroad, and should be built in a substantial manner and have a neat appearance and be kept painted the same color as the railroad company's buildings in that vicinity, and that the building and improvements would be removed and the right of way vacated whenever demanded by the railroad company upon giving thirty days notice in

writing. Under the terms of this lease the Standard Oil Company erected an oil warehouse and oil tank, these improvements being on that part of the depot grounds that was originally known as the Bookter tracts. These structures or improvements were maintained and used by the Standard Oil Company until 1917, when they were destroyed by fire.

Thereafter, on January 29, 1917, a new lease was executed whereby the railroad company, for an annual rental of thirty-six dollars, granted to the Standard Oil Company, for a term of five years, the right to inclose and occupy a particularly described part of the depot grounds; the portion of land to be so occupied and used being something over one hundred feet further removed from the main line of the railroad than the place where the warehouse that was burned was located, but still being on that portion of the depot grounds which had been originally acquired from Alexander Bookter by the condemnation proceedings. This lease provided for measures for protection against fire, and further provided that if the lessor should sooner desire a restoration of the leased premises, the leesee would, upon ninety days' notice, restore peaceable and quiet possession of the premises to the lessor.

Under the terms of this lease the Standard Oil Company inclosed the land described therein with a fence, and erected within this inclosure substantial oil tanks and other equipment, necessary or useful in storing and handling oil. The portion of land so inclosed lay along and near Bookter street, and it is shown by the evidence that the railroad company delivered tank cars loaded with oil on a side track across Bookter street and some distance removed from this inclosure and oil depot. From the point where the tank cars were delivered by the railroad company, the oil was conveyed from these cars to the storage tanks of the oil company by means of a pipe line. From these storage tanks the oil was delivered to the customers of the oil company by means of oil wagons and motor-driven oil trucks.

The decisive question for a decision is whether or not the leasing of the land to the Standard Oil Company and the use thereof, under the circumstances and in the manner stated, was a use consistent with the purposes for which the right of way was acquired, or whether it was a use so foreign to railroad purposes as to constitute an abandonment or an additional servitude not permissible under the right of title acquired for railroad purposes by condemnation or otherwise.

As to whether certain uses of a railroad right of way are inconsistent with the purposes for which it was acquired, there is some conflict in the authorities; but the authorities generally support the conclusion that a railroad company may make any use of the land acquired by it for a right of way, which directly or indirectly contributes to the safe, economic, and efficient operation of the road, and which does not interfere with the rights of property pertaining to the adjacent lands. As said by Justice BREWER in *Western U. Teleg. Co.* v. *Rich,* 19 Kan. 517, 27 Am. Rep. 159:

"The railroad company may use its right of way not merely for its track, but for any other building or erection which reasonably tends to facilitate its business of transporting freight and passengers, and by such use in no manner transcends the purposes and extent of the easement, or exposes itself to any claim for additional damages to the original landowner."

In the consideration of the question of the rights of a railroad company in the use of its right of way it has been held that, if the company, in order to facilitate its business, could have erected similar structures and put the land to a similar use, it could license others to do the same thing for the same object. *Grand Trunk Ry. Co.* v. *Richardson,* 91 U. S. (1 Otto) 454, 23 L. Ed. 356; *Illinois C. R. Co.* v. *Wathen,* 17 Ill. App. 582.

That the railroad company would have had the right to have erected and used the oil tanks and other structures for the purpose of facilitating the unloading of its

tank cars and the delivery of oil and oil products would hardly be questioned. The evidence shows, and it is a matter of common knowledge, that oil is transported in tank cars, and in order to be efficiently handled it must be unloaded into oil tanks. It is manifest that the handling of the oil will be greatly facilitated by having these tanks located in close proximity to the tracks of the railroad. It may be true, as contended by the appellants, that it is possible to locate these receiving tanks at some place away from the right of way and to transport the oil to these tanks by means of a pipe line, but it is not shown that the necessary location, and rights of way for pipe lines, could have been obtained, or that the oil could be promptly and effectively handled in this way, and since the piping of this oil involves the unloading of the cars of the railroad company, it is reasonable to conclude that this ought to be within the grounds and under the control of the railroad company so that it might be done under the supervision of its own employees. It is certainly to the interest of the public that the oil be handled as cheaply and efficiently as possible, and there is nothing in the record to show that the same facilities had been or would be denied to any other oil company, and we are of the opinion that the construction and maintenance on the right of way of these tanks and other facilities for the handling of oil reasonably tends to facilitate its business of transporting this character of freight and does not constitute a misuse of the easement which the railroad acquired in the land.

In 36 L. R. A. (N. S.) 512, may be found an elaborate note in which the authorities on this subject are collated and discussed.

There was some testimony tending to show that the Standard Oil Company parked its oil wagons and trucks under a shed erected on the lot, and permitted its mules to run within its inclosure when they were not in service, and the argument is made that this constituted a misuse of the easement which would entitle appellants to dam-

ages for such wrongful use; but no such question is presented by the pleadings, and it is unnecessary to decide whether this was a misuse of the easement or merely an incident to the legitimate use as an oil depot.

The decree of the court below is affirmed.

*Affirmed.*