(No. 27242.—

Forster I. Mitchell, Appellee, *vs.* Illinois Central Railroad Company *et al.*, Appellants.

*Opinion filed Sept. 24, 1943—Rehearing denied Nov. 12, 1943.*

GRAHAM & GRAHAM, EPLER C. MILLS, and KENNETH H. LEMMER, (VERNON W. FOSTER, CHARLES A. HELSELL, and JOHN W. FREELS, of counsel,) for appellants.

FORSTER I. MITCHELL, *pro se,* and LONDIGRAN & LONDRIGAN, RICHARD W. VELDE, and WILLIAM M. COPPEL, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

Defendant Illinois Central Railroad Company, as assignee, is successor to all the right, title and interest conveyed in 1879 to its predecessor, the Champaign, Havana, and Western Railway Company, by Lewis W. Ross and wife, as owners in fee of a 100-foot strip of land located in Havana, Mason county, "for the purpose of constructing, maintaining and operating thereon a single or double track railway, with all the necessary appurtenances." Plaintiff, Forster I. Mitchell, became interested in the premises by virtue of a deed from Jennie Barrere and others in November, 1928. He later instituted partition proceedings in the circuit court of Mason county, culminating in a master's deed dated January 4, 1940, conveying to him the underlying fee, subject to the exclusive right in the nature of an easement of the Illinois Central Railroad Company to use the premises for railroad purposes. March 14, 1940, the railroad company entered into a lease with defendant W. E. Beach, doing business as Illinois Independent Oil Company, for a portion of the premises comprising 5040 square feet of its right of way in Havana, to be used and occupied exclusively as a site for a "combination bulk oil and filling station." The lease, specifying a rental of $50 per annum for a period of five years, subject to termination upon sixty days' notice, was subsequently approved

by the Illinois Commerce Commission, pursuant to a petition of the railroad company. March 15, 1940, Beach entered into possession, erected a filling station and installed two 2000-gallon underground gasoline tanks. Thereafter, he sold at retail gas, oil and kindred products. August 17, 1940, plaintiff filed his complaint in the circuit court of Mason county assailing the validity of the lease so executed. The specific relief sought was an injunction restraining defendants from erection or use of a retail filling station and from selling oil, gasoline and other drive-in filling station commodities at retail. The professed purpose of the litigation was the elimination of competition with a retail filling station owned by plaintiff, located adjacently. Plaintiff's complaint is predicated on the theory that retail use of the premises exceeds the easement rights of the railroad company for railroad purposes, thus constituting a usurpation of plaintiff's rights as holder of the underlying fee. Defendants, on the other hand, maintain the authority of the railroad company to lease the premises for a combined bulk and retail gasoline station, as being a proper exercise of its rights under the deed by which, as assignee, the railroad company holds title for railroad purposes. The chancellor referred the cause to a special master in chancery who recommended a decree denying an injunction and dismissing the complaint. The circuit court, after a hearing, followed the recommendations of the special master, and entered a decree dismissing the complaint for the want of equity. Upon appeal, the Appellate Court for the Third District reversed the decree of the circuit court and remanded the cause, with directions to enter a decree restraining defendants from the operation of a retail drive-in gasoline filling station. The cause is here on a certificate of importance granted by the Appellate Court.

The evidence shows that petroleum products rank as an item of freight, measured both by tonnage and by rev-

enue, second in importance on the Illinois Central railroad and, further, that there is keen competition for the business of transporting such products, on the part of other railroad systems and of companies operating trucks, pipe lines and barge lines. Beach, the lessee, operates eleven bulk and nineteen retail drive-in gasoline stations in central Illinois. In addition to a bulk station of 70,000 gallons capacity, located on the right of way of the Illinois Central Railroad Company, in Havana, not far from the proposed station, two additional retail drive-in stations in Havana are also operated by him. According to the evidence, all gasoline thus far delivered, and to be delivered to the combined bulk and retail filling station when completed, is from tank cars on the railroad direct to the storage tanks. When in full operation, Beach expects to use about twelve 8000-gallon tank cars of gasoline annually. The freight rate is from $200 to $225 per car for shipment from Oklahoma, $90 from East St. Louis and $40 from other points in southern Illinois. Most of Beach's shipments are from Oklahoma. Oil and other supplies are delivered by truck.

The record contains testimony to the effect that it is a common practice among railroad companies to lease available sites along the rights of way to shippers of petroleum products as bulk stations, retail stations, and combinations of both for the purpose of effecting economy of operation to the railroad companies and to the shippers. An attorney employed by the Illinois Commerce Commission testified that thousands of leases for rights of way are made by railroad companies every year and that both the Interstate Commerce Commission and the Illinois Commerce Commission impress upon railroad companies the policy of obtaining incidental revenue from leases of those portions of the rights of way not immediately needed for operating uses. An employee of defendant Illinois Cen-

tral Railroad Company testified that the company has along its right of way 287 sites leased for bulk stations, 23 for combined bulk and retail filling stations and 45 for separate filling stations.

Here, the lease specifies the use of the premises for a "combined bulk oil and filling station." As stated, two 2000-gallon underground tanks have already been installed. The plans, approved by the State Fire Marshal, provided for the installation of two additional underground tanks, one of 2000 gallons and another of 6000 gallons capacity. Plaintiff asserts that the maximum storage capacity of 12,000 gallons contemplated renders the station inadequate for bulk sales purposes, and that, because only retail sales have thus far been consummated, the appellation "bulk" is a mere sham. An attendant at a bulk station located nearby, from which retail sales are also made, testified that at his station three storage tanks were installed, one of 11,513 gallons capacity, and two holding 1,016 gallons each, a total of 13,545 gallons. An employee of defendant Beach, called by plaintiff, testified that one of the retail stations operated in Havana by Beach had four tanks, two of 2,000 gallons, one of 320 gallons and one of 100 gallons capacity; that the other had six tanks, two of 2,000 gallons, one of 320 gallons, and three of 100 gallons capacity. From this testimony, it adequately appears that the total contemplated storage capacity for the proposed station compares favorably with the bulk and retail station located adjacently, and greatly exceeds in capacity that of the purely retail stations conducted by Beach in Havana. The evidence is uncontroverted and sufficiently shows that Beach intended to operate a combined bulk and retail filling station, and that the additional tanks required to bring the capacity up to the 12,000 gallons proposed have not been installed only because of this litigation. The issue made by the pleadings and the proof is,

accordingly, whether the use proposed, namely, a combined bulk and retail filling station, constitutes a legitimate railroad purpose.

The owner of the fee of land subject to the public easement of a railroad company may maintain an action of trespass or ejectment against any other person whose entrance or acts upon the premises would support the action, unless such person can justify under authority of the railroad company having the easement. (*Dickman* v. *Madison County Light and Power Co.* 304 Ill. 470.) A grant of a right of way to a railroad company conveys an interest which is absolute for the purposes for which it was conveyed so long as it is devoted to those purposes, even though the language of the deed falls short of conveying the fee to the land. (*Walker* v. *Illinois Central Railroad Co.* 215 Ill. 610.) The acquisition of land by a railroad company is limited to the purposes necessary to accomplish the object of its incorporation. Railroad purposes include such a variety of uses as changes in circumstances may bring about, depending upon the facts in each case. The use, if reasonably necessary, is generally sustained. (*Toledo, Peoria and Western Railroad* v. *Brown,* 375 Ill. 438.) During the railroad company's occupancy under its grant to use the property for railroad purposes, the company may make any use of the land which, directly or indirectly, contributes to the safe, economical and efficient operation of the road, and which does not interfere with the rights of property pertaining to the adjacent lands. It has the right to do all things with its right of way, within the scope of its charter powers, which may be essential or incidental to its full and complete use to accomplish the purpose for which the easement was acquired. 2 Lewis on Eminent Domain, 3rd ed. sec. 845 (584), p. 1472.

Plaintiff makes the concession that a railroad company may serve bulk stations on its premises held only for

railroad purposes. It is only the retail sale of gasoline and other products to which objection is made. By his concession that bulk gasoline station leases constitute proper railroad use, plaintiff admits the use of the premises for selling oil and gasoline is proper. The theory under which a bulk station is permissible is that it reasonably facilitates the railroad business of transporting oil and does not constitute such a misuse of the easement acquired in the land as will entitle the owner of the fee to complain. (*Weir* v. *Standard Oil Co.* 136 Miss. 205. No compelling reason is advanced by plaintiff, or in the authorities cited by him, satisfactorily explaining why, if a bulk, or wholesale, station is allowed to be operated on a railroad right of way, the owner of the bulk station, in addition to selling wholesale, cannot likewise properly include facilities for selling at retail. It cannot be because either type of sale necessarily results in an increase in freight handled by the railroad company, because a thriving retail business might well be productive of more freight business. The storage facilities would be the same, either for a bulk or retail station. Again, the number of individual sales, or the quantity delivered on each sale, made by either a bulk or retail station, is not determinative, for the reason a bulk sale might conceivably be less than one at retail, there being no restriction as to the number of gallons purchasable at a bulk station and no maximum prescribed for sales at a retail station. Moreover, the purpose of purchase is not controlling. One may drive in to fill a tank to use the gas for a tractor, or for resale, but it is not forbidden to use it solely to propel an automobile into which it is pumped. There appears to be no distinction, either in reason or upon authority, for upholding the lease in one instance and declaring it void in the other. The decision must be based upon something more tangible than the mere difference between bulk and retail sales. Some detriment to the

owner's fee by retail selling in conjunction with bulk, or wholesale, sales, must be present which does not occur when the sales are by bulk, alone. No such difference, warranting interference by injunction, is here apparent.

Coupled with these considerations is a stipulation to the effect that exhibits 1 to 15, introduced by the railroad company, are leases consummated since 1900 by the railroad company for the use of space within the right of way included in Ross's conveyance of 1879. The evidence conclusively shows that these portions of the right of way were for many years leased by the company as a convenience to the business of shippers by rail, chiefly the handling of coal but, also, including other similar items, and there is testimony in the record that products thus received were sold by lessees at retail, without objection by the owners of the fee. Defendants urge that plaintiff is bound by the acquiescence of his predecessors in title and, hence, precluded from now claiming as a violation of the grant uses similar to those previously approved by his predecessors in title. Acquiescence by the fee owners for more than forty years in uses similar to the use of the property proposed by Beach affords a practical interpretation of the easement, fortifying our conclusion. As stated in *Walker* v. *Illinois Central Railroad Co.* 215 Ill. 610, 619: "It is allowable always to look to the interpretation the contracting parties place on their agreement, either contemporaneously or in its performance for assistance in ascertaining its true meaning. No extrinsic aid can be more valuable."

In *Illinois Central Railroad Co.* v. *Wathen,* 17 Ill. App. 582, it was held that the erection and use of elevators, corn cribs, lumber yards and lime houses on the right of way of the railroad companies, which facilitated the business of the companies in the receipt, transportation and discharge of freight, was not such a violation of the terms of the grant as would warrant a decree restrain-

ing the further use for such purposes and compel the parties to respond in damages. The Appellate Court further held Wathen estopped from claiming that the use was not within his grant, since the use to which it was then applied was the same as when the grant was made, observing: "In this case there is no claim that this occupancy in any way interferes with the convenience of the public, or was any damage to the complainant or any prejudice to the railroad companies in the discharge of their duties to the public. Complainant's sole claim is that under this clause in the deed he ought to recover from these occupants the rental value of the ground, and that the railroad companies ought to be enjoined from permitting such occupancy without his consent. The evidence discloses that this occupancy facilitates the business of the railroad companies, that it is necessary and is the universal practice in the western States to permit such use of their right of way at stations. The lumber and grain business constitutes a very large part of the business of all the railroads in this country, and without these facilities for receiving, storing and discharging the same, the transportation of such articles by rail would be greatly impeded, if not wholly destroyed."

The circumstances in the *Wathen case* are somewhat analogous to the facts here present, and the reasons assigned are particularly pertinent. There, the practice of leasing portions of the right of way to facilitate the receipt, storage and discharge of freight pertaining to the lumber and grain business was approved, and the quoted observations apply with like force to petroleum products. Again, the prior use of the premises, being the same use as was complained of by him after he had delivered title, was held sufficient to preclude him from claiming the use was not within the grant. Here, the previous history shows that portions of the premises admittedly included in the conveyance by Ross, in 1879, likewise have been

for a long period, with the acquiescence of the owners of the fee, leased by the railroad company for retail purposes. The evidence also discloses it is the·common practice of railroad companies to lease portions of their rights of way, a practice strongly encouraged by the Illinois Commerce Commission to promote increased revenue and reduce transportation costs. A railroad company is permitted to do all things with its right of way, within the scope of its charter powers, essential or incidental to its full and complete use for the purpose for which it was acquired. When all the facts and circumstances are considered, it cannot be ·said that the proposed use of the premises by Beach, as a combined bulk and retail gasoline station, is not such a use as may be justified under authority of a railroad company having an easement.

Numerous cases are cited by plaintiff to sustain the Appellate Court judgment in his favor. Two cases strongly relied upon are *Dickman* v. *Madison County Light & Power Co.* 304 Ill. 470, and *Hicks* v. *Chicago & North Western Railway Co.* 127 Fed. (2d) 1001. In the former, an electric railroad company operating over an easement for railroad purposes permitted the light and power company to take electric current for resale from the power station of the railroad company and distribute it through lines constructed along the right of way. The fee owners sought to prevent this use of the easement as beyond proper railroad use. The erection of structures and preparation for the future of its business was held to be a legitimate function of a railroad company. Likewise, the disposal of power generated in excess of its present needs was approved, providing good faith were shown in anticipating its future needs under an arrangement reserving the right to use such power for its railroad when necessary so to do. Nothing in the *Dickman case* militates against any *bona fide* use of a right of way properly incidental to railroad purposes. Here, the ques-

tion is not with respect to the railroad company engaging in a transaction solely for the use of Beach in the pursuit of a different business from that conducted by the railroad company, but is merely whether the operation of the bulk and retail business proposed by Beach was incidental to such railroad purposes. The good faith of the parties to the lease is sufficiently shown, and no valid reason is advanced why the lease should not be approved. *Hicks* v. *Chicago & North Western Railway Co.* 127 Fed. (2d) 1001, holds that the station which was the subject matter of the lease, although denominated a "bulk oil station and retail filling station," was in reality merely a retail filling station. This conclusion renders the decision inapplicable to the present factual situation, involving a "combined bulk and retail filling station." Nor does *Bond* v. *Texas & Pacific Railway Co.* 181 La. 763, aid plaintiff. There, the railroad company was denied the right to lease a portion of its right of way to a private gin company serving the general public, with a view of increasing its business by obtaining freight. Other authorities cited by plaintiff are not controlling, and no useful purpose would be served in analyzing them.

Subsequent to entry of the decree by the circuit court, plaintiff tendered what is designated a "petition for leave to file a bill of review" to set aside the decree. His petition was based upon the failure of the special master, before whom the clause was heard, to subscribe to the statutory oath. Error in the denial of his petition, among other reasons, is assigned by plaintiff to sustain the judgment of the Appellate Court. Plaintiff appeared and contested the cause before the special master and failed to raise any question with respect to his oath until after rendition of an adverse decision by the chancellor. His active participation before the special master, without objection, constituted a waiver of the taking of the oath by the special master.

In its petition to the Illinois Commerce Commission seeking the approval of the lease, the railroad company stated it was the owner or lessee of the premises. It is urged that this claim of ownership constituted a disseizin and practical ouster of plaintiff, which would ripen into a fee in favor of the railroad company if allowed to continue for the statutory period. Plaintiff's contention is without merit. The rule governing the occupation of premises under which disseizin will occur is aptly stated in *Thompson* v. *Toledo, St. Louis and Western Railroad Co.* 271 Ill. 11: "No possession that is not adverse can ever ripen into a title under the Limitation law. The presumption of law is that the possession of real estate is subservient to the rights of the owner of the record title, and where the possession has been consistent with his title, nothing but a clear, unequivocal and notorious disclaimer and disavowal of the title of such owner will render the possession, however long continued, adverse to him. In such a case something must be proved which amounts to an ouster of the true owner of the land, and until that occurs the Statute of Limitations does not begin to run." The statement in its petition that it was the owner or lessee is consistent with the railroad company's ownership of the easement over the premises, fee title to which is held by plaintiff, and is not, necessarily, an adverse claim of ownership in fee. There was never any change in the nature of the possession or any indication that such possession ever became adverse and inconsistent with that of the true owner. So far as the record discloses, the relationship between the parties, after the execution of the lease, was the same as before.

The contention is next advanced that an injunction should lie owing to the failure of the railroad company to fence its right of way as required by the applicable statute. The fencing of railroad property is based upon section 1 of an act in relation to fencing and operating

railroads. (Ill. Rev. Stat. 1941, chap. 114, par. 53.) The penalty for failure to fence, primarily, is liability for injury to live stock. It is argued that if the right of way were fenced it could not be used as a retail drive-in gasoline filling station. The evidence, and particularly defendants' exhibit 20, representing a map of a portion of the city of Havana, shows the property to be located within the corporate limits of the city. By the express provisions of the statute fences are not required "within such portion of cities * * * as are or may be hereafter laid out and platted into lots and blocks." This unambiguous statutory provision does not apply to the situation here presented.

The judgment of the Appellate Court is reversed, and the decree of the circuit court is affirmed. .

*Judgment of Appellate Court reversed;*
*decree of circuit court affirmed.*

Mr. JUSTICE MURPHY, dissenting.