**MISSISSIPPI INVESTMENTS, Inc., v. NEW ORLEANS & NORTH EASTERN R. CO. et al.**

No. 13219.

United States Court of Appeals Fifth Circuit.

April 6, 1951.

Garner W. Green, Reynolds Cheney, Jackson, Miss., Jack McDill, Laurel, Miss., for appellant.

Ben F. Cameron, Meridian, Miss., J. Blanc Monroe, New Orleans, La., for appellee.

Before HUTCHESON, Chief Judge, and McCORD and BORAH, Circuit Judges.

BORAH, Circuit Judge.

This suit for a declaratory judgment was brought by New Orleans & North Eastern Railroad Company (Railroad) against Mississippi Investments, Inc., (Investments) and Frank Gardner Hardware & Supply Company (Hardware) to cancel Investment's claim that Railroad could not lease a portion of its then unused lands at Laurel, Mississippi, to Hardware and others for warehouse purposes; to compel Hardware to perform certain lease agreements; and to have the court declare and adjudge its right to lease the lands for such purposes.

The material facts, so far as they need be stated, are these: Railroad alleges that it is the real owner of and in possession of certain lands in the City of Laurel, having acquired title thereto under the following deeds. The first of these deeds, dated January 28, 1882, was from W. F. Evans & Company, predecessor in title of Investments, and conveyed to Railroad a right of way for two hundred feet south of the half-section line of Sec. 6, T. 8 N. R. 11 W.[1] Three months later, in April 1882, Evans & Company conveyed[2] to Railroad an additional two hundred foot strip of land, being one hundred feet on each side of and parallel to the original two hundred foot grant. This deed recites that the land was conveyed for the "sole and only purposes of Depot, sidings and switches and other railroad purposes." In September, 1887, John Kamper by two deeds conveyed to Railroad certain parcels of land lying north of the half-section line of Section 6, a description of which need not here be stated for reasons presently appearing.

Following the conveyances described, Railroad entered into possession of the lands, constructed its railroad thereon, and for more than 60 years continuously occupied and used the lands as part of its interstate railroad. In June, 1945, Investments began to question the right of Railroad to lease these lands to its customers and patrons. Thereafter, Railroad entered into leasing agreements with Hardware, under the terms of which Railroad leased certain portions of the lands south of the half-section line which were not, in its judgment, needed at the time for railroad tracks, sidings, depots and other like purposes. These leases provide in substance that the lands demised are to be occupied and used for the purpose of erecting a warehouse for the conduct of lessee's hardware business involving the storage and handling of freight forwarded and received by the lessee over the lessor's railroad lines and for no other purposes. Under the terms of the leases, Railroad is to receive a substantial compensation as rent.

In August, 1948, Investments gave notice to both Hardware and Railroad that neither of them had any valid claim of right in the lands and that Railroad had never had so much as a conveyance of a restricted easement therein. Because of this attitude of Investments and its threat to initiate litigation, Hardware refused to perform under the contracts and in consequence Railroad brought this action.

Prior to the institution of suit, Investments gave Railroad notice that its title in the lands lying north of the half-section line was being slandered. In its answer, however, it disclaimed any interest in the land.

---

1. The deed dated January 28, 1882 reads in part as follows: "I hereby grant, bargain, sell and quit claim unto the said New Orleans and North Eastern Railroad Company, a Right of Way for two hundred feet, through the following lands, to-wit: The N.W. ¼ N. ½ S.W. ¼ Sec. 32. T. 9 N.R. 11 W. Also the S.E. ¼ of Sec. 6, and the N.E. ¼ Sec. 7 & the S.E. ¼ of S.W. ¼ Sec. 7 in T. 8 N.R. 11 W."

2. The deed dated April 29, 1882 reads in part as follows: "We hereby sell and quitclaim to * * * an additional two hundred feet through the E/2 of S. E./4 of Sec. 6 T. 8 N.R. 11 West in Jones County, being one hundred feet on each side of and parallel to the right of way heretofore granted * * * for the sole and only purposes of Depot, sidings and switches and other railroad purposes."

north of the half-section line but claimed ownership of the fee in that land lying south of the half-section line, west of the railroad track, and specifically denied that Railroad had other than an easement therein. In view of this claim on the part of Investments, that the deeds from W. F. Evans & Company conveyed only an easement for railroad purposes, Railroad, in order to simplify the issues, assented to that contention for the purposes of this action. Consequently, the trial court in its judgment did not determine ownership of the fee but assumed that these two deeds conveyed only an easement for railroad purposes.

The arguments in this case have taken a wider range than is required for its decision. The important question here is whether Railroad, having an easement in lands, has the general right to lease portions of its unused lands to its patrons for the maintenance of warehouses and other like structures for the receipt and delivery of freight shipments. Specifically involved is the question as to whether plaintiff's leases with Hardware were for railroad purposes and in conformity with the duty which Railroad owes to the public.

Regardless of what the law may be in other jurisdictions, we have no doubt whatever but that under the decisions of the highest court of the State of Mississippi, which are controlling, the leases to Hardware were for a use consistent with the purposes for which the easements were acquired and were not so foreign to railroad purposes as to constitute an abandonment or an additional servitude not permissible under the right of title acquired for railroad purposes. Weir v. Standard Oil Co., 136 Miss. 205, 101 So. 290, 292; Jones v. City of Hattiesburg, Miss., 42 So.2d 717; see Mitchell v. Illinois Cent. R. Co., 384 Ill. 258, 51 N.E.2d 271, 149 A.L.R. 369; 44 Am. Jur., § 144, p. 358; Anderson v. Interstate Mfg. Co., 152 Iowa 455, 132 N.W. 812, 36 L.R.A.,N.S., 512 et seq.; 94 A.L.R. 522 et seq.; Wilzinsky v. Louisville, N. O. & T. Ry. Co., 66 Miss. 595, 6 So. 709, upon which Investments relies, is not *contra* but is clearly distinguishable on its facts.

We are not impressed by defendant's contention that the judgment of the court below imposes onerous burdens on the servient estate. The court below did not determine ownership of the fee, nor did it give the Railroad unlimited authority to lease the lands for any and every purpose. The judgment was rendered on the basis of facts before the court and the obligation rests on Railroad to see to it that the use of the land sued on conforms to the concept of "railroad purposes." If Railroad should deviate from that concept, it will have placed itself beyond the scope of the judgment and cannot claim its protection. Therefore, all rights which Investments ever possessed are preserved in their entirety.

Other points raised by Investments have been carefully considered but do not merit discussion.

The judgment was right and it will be affirmed.

Affirmed.