LEORA I. McSWEYN, appellant, v. INTER-URBAN RAILWAY COMPANY et al., appellees.

No. 51378.

(Reported in 130 N.W.2d 445)

September 22, 1964.

Hiram S. Hunn, of Des Moines, for appellant.

Bannister, Carpenter, Ahlers & Cooney, of Des Moines, for appellees Inter-Urban Railway Company and Des Moines and Central Iowa Railway Company.

Keith E. McWilliams, of Des Moines, for appellees Eugene R. Severs and MacMillan Oil Company.

GARFIELD, C. J.—This is an action in equity for declaratory relief, injunction and money damages in which plaintiff Leora I. McSweyn claims defendants, Des Moines and Central Iowa Railway Company and Eugene R. Severs, d/b/a MacMillan Oil Company, have no right to use a narrow strip of ground adjoining the railroad right-of-way for storage of oil tank cars from which deliveries are made to Severs' customers. Principal bases for the action are 1) a claimed restrictive covenant as to use in a deed from a remote grantor of plaintiff of ground adjacent to hers, and 2) alleged violation of the Polk County Zoning Ordinance. Following trial to the court, relief was denied and plaintiff appeals.

The property in controversy is near the north city limits of Des Moines, just east of Second Avenue, a main highway into the city from the north. The railroad track runs east-west at this point and crosses over Second Avenue on a bridge or viaduct. The railway is a short line, operating mainly in and near the city, picking up freight to be delivered to other railroads and receiving freight from them for delivery in the Des Moines area. Before 1950 power for movements of cars and trains came from overhead electric trolley wires. Since 1950-51 the electric power has come from Diesel motors in the locomotives.

In 1901 C. L. Moss, then owner, deeded to the railway's predecessor in interest the North 25 feet of the NW¼ of the SW¼ of the NW¼ of Section 23, Township 79, Range 24 in

Polk County, containing about .38 acre, except a strip three feet wide out of said land on the south side of said right-of-way "where five maple trees are now standing. * * * 2nd party agrees to fence with woven wire *and to use said land for electric railway only*." Plaintiff contends the language we have italicized is a covenant restricting use of the land which binds defendants and inures to her benefit. The deed was filed for record in Polk County two days after the date it bears.

In 1902 one Bacon, then owner, deeded to the railway's predecessor the south 25 feet of the west 30 acres of the NW¼ of the NW¼ of Section 23. This strip adjoins on the north that deeded by Moss in 1901.

About 1901 the present railway's predecessor in interest built its single track on this 50-foot strip just north of the south half conveyed by Moss.

In 1915 the NW¼ of the SW¼ of the NW¼ of Section 23 and land in Section 22 were platted as Interurban Acres, adjoining the railway on the south. Plaintiff became the owner of Lot 4 in this subdivision in 1917 and has lived there since then. Moss was her remote grantor. Only access to her property is from Hancock Street which comes from the east along the south side of the railroad right-of-way and ends at the entrance to her garage.

In 1943 Second Avenue was widened to the north from the north city limits. To make adequate room for motor vehicle traffic beneath the railroad track, it was raised about eight feet and moved about ten feet to the north.

In chronological order, Severs acquired land in 1954 on the west side of Second Avenue just south of the railroad as a location for an extensive business, both wholesale and retail, in petroleum products. He there has large storage tanks for highly flammable propane gas, a business office, large storage tanks for gasoline and a filling station with the usual pumps to service motor vehicles.

In 1961 Severs acquired a small tract on the east side of Second Avenue just south of the railroad right-of-way. He surfaced this with crushed rock and uses it for storage of oil tank trucks and transports and other motor vehicles and for a road-

way between Second Avenue and a spur track the railway built for Severs in 1962, under a lease to him and mostly at his expense, just south of the present main track. This spur is very close to the location of the main track before it was moved to the north in 1943. The spur takes off from the main track about 1000 feet east of the center line of Second Avenue. Its west end is nearly even with the east side of the railroad bridge over the avenue and the center (east and west) of the small tract, above referred to, purchased by Severs on the east side of Second.

This spur was built for storage of tank cars filled with 8000 to 12,000 gallons of No. 5 or 6 fuel oil or, as Severs calls it, industrial fuel. It is long enough for 20 tank cars. Along the south side of this spur and the north end of the small tract purchased by Severs he installed a drive about 25 feet wide surfaced with crushed rock over which his tank trucks or transports are driven alongside the tank cars. The cars are emptied into the tank trucks by a movable gasoline pump and hose. The trucks are driven to and from the rock drive both over Severs' small tract just east of Second Avenue and south of the drive and the roadway at the west end of Hancock Street at the northeast corner of plaintiff's property.

The tank cars remain on the spur track until emptied into trucks for delivery to Severs' customers. Some cars remain as long as 90 days. During the trial four full cars had been there a month. Severs has them leased from the time they are filled at the refinery until returned empty to the railway. It takes from one to 12 hours to empty a car into trucks, depending on temperature and the specifications of the oil.

Plaintiff complains mainly of dust from trucks and autos driven over the rock drive, fumes from the oil and vibrations from the unloading pump and the trucks.

Other facts, especially those bearing on claimed violation of the zoning ordinance, will be mentioned later.

I. The trial court held: 1) use of the spur and drive was a reasonable one for railway purposes, 2) the language of the 1901 deed from Moss to the railway's predecessor did not restrict the use of the land conveyed but merely declared the purpose of the grant, 3) the provision was personal to the parties thereto,

4) if the 1901 deed imposed any restriction on use of the tract it has been terminated by changed conditions, 5) defendants have not violated the county zoning ordinance, and 6) plaintiff is estopped to maintain the action.

We consider first the nature and effect of the provision in the deed. It is of some significance it was a warranty deed of the *land*, not merely of an easement or right-of-way. It is true the exception of the three-foot strip where the maple trees were standing and a reservation of any improvements then on the land conveyed referred to "said *wright* of way." The particular provision on which plaintiff relies is the grantee's agreement "to use said land for electric railway only." It is not an agreement to use the land for right-of-way only.

Plaintiff concedes the Moss deed conveyed a fee title to the land, not a mere easement over it. We therefore treat the deed as a conveyance of a fee and do not further discuss a proposition involved in many decisions of this kind which are not always easy to reconcile. See Des Moines City R. Co. v. City of Des Moines, 183 Iowa 1261, 1267–1271, 159 N.W. 450, L. R. A. 1918D 839; Annotation, 132 A. L. R. 142. In the cited precedent the land was conveyed by quitclaim deeds which stated it was to be used for the construction and operation of a street railway.

As previously indicated, plaintiff contends the language of the deed quoted above is a covenant restricting use of the land conveyed which binds both the railway and Severs and inures to her benefit. It is obvious the provision restricts use of the 25-foot strip to electric railway purposes. That such a limitation on use of the strip is valid, at least as between the parties to the deed, seems clear. Similar limitations have frequently been upheld. By accepting the deed the grantee became bound to perform the covenant in it. Thodos v. Shirk, 248 Iowa 172, 179, 79 N.W.2d 733, 737; Sexauer v. Wilson, 136 Iowa 357, 364, 113 N.W. 941, 14 L. R. A., N. S., 185, 15 Ann. Cas. 54. We are cited to no authority for the view such a provision is contrary to public policy.

"A grantor may validly specify or limit the use of property, or prohibit its use for a specified purpose." 26 C. J. S., Deeds, section 144. See also Id., section 162(1); 14 Am. Jur., Cove-

nants, Conditions and Restrictions, sections 196, 206; Annotation, 21 A. L. R. 1281, 1289.

The present railway is the successor in interest of the grantee of the deed as a result of reorganizations of the grantee. Defendant railway took only such interest as the grantee acquired from Moss. Although the deed to Severs—from the railway—of the tract on the east side of Second Avenue and the "Sidetrack Agreement" between them for construction and use of the spur contain no mention of the restriction in the Moss deed, it was duly filed for record in Polk County and thus imparted constructive notice of the restriction to both defendants. Grange v. Korff, 248 Iowa 118, 128, 79 N.W.2d 743, 749, and citations; Note 49 Iowa Law Review 1246, 1251.

The question whether plaintiff may enforce the restriction, assuming for the present it has been violated, is more doubtful. It depends primarily on whether it was intended to benefit Moss' remaining land, not merely himself personally. We conclude the restriction was intended to benefit his remaining land. In all probability this was the intention of inserting in the deed the provision that the grantee would fence the strip with woven wire and the restriction as to use seems no less beneficial to Moss' remaining land.

"If it sufficiently appears that it is the land retained that is to reap the advantage, then any person into whose hands the property passes may enforce the restrictions as well as if he were the original party to it." Annotation, 21 A. L. R. 1281, 1289. "To the argument that the grantor intended the restriction for his own personal benefit, and that it was a mere personal covenant, and not a covenant running with the land, it may generally be answered that the grantor could not intend it for his own personal benefit, except * * * as owner of the land retained * * *." Id., page 1292.

The annotation just cited is supplemented in 33 A. L. R. 676, 60 A. L. R. 1223 and 89 A. L. R. 812. Our conclusion finds support in what is said in Thodos v. Shirk, supra, 248 Iowa 172, 178–182, 79 N.W.2d 733, 737–739, which discusses restrictive covenants more fully than any other recent Iowa decision. The Thodos case is approved in Grange v. Korff, supra, 248 Iowa

118, 124–127, 79 N.W.2d 743, 747, 748; Jones v. Beiber, 251 Iowa 969, 103 N.W.2d 364; and Beeler Development Co. v. Dickens, 254 Iowa 1029, 1034, 1035, 120 N.W.2d 414, 416, 417. See also 26 C. J. S., Deeds, section 167(1), pages 1141, 1142; 14 Am. Jur., Covenants, Conditions and Restrictions, sections 311, 314. The more recent Iowa decisions are discussed in the note in 49 Iowa Law Review 1246.

■ II. We consider now whether it has been shown defendants are not using the 25-foot strip for electric railway purposes. In general courts are slow to reach such a conclusion. A railroad may make any use of land acquired for railroad purposes which directly or indirectly contributes to the safe, economical and efficient operation of its road and does not interfere with the property rights of adjoining owners. It may make any use of its land which is incidental to railroad purposes or, as frequently expressed, is not a misuse of it. And whatever the railroad may do itself it may license another to do.

■ There can be no doubt the restriction in the deed did not prevent defendant railway from building the spur and spotting freight cars on it loaded with oil or other freight to be unloaded. Freight must be unloaded at its destination and it cannot be expected trains will stop while carloads are unloaded. If Severs did not leave the tank cars on the spur until unloaded in filling orders from his customers, but removed the oil within a reasonable time after delivery of the cars, we think it clear the restriction in the deed would not entitle plaintiff to equitable relief. The evidence does not show, and it is not apparent, the delay in removing the oil from the cars is prejudicial to her. So far as shown, total time consumed in unloading a car and the number of trips made by the tank trucks would be the same in either event.

We are not persuaded the practice Severs follows violates the restrictive covenant and entitles plaintiff to the relief sought. Similar uses have been sustained as not a misuse of property held for railroad purposes. A leading Iowa case holds a railroad which we treated as having only an easement, not as here a fee title, in its right-of-way could, as against the owner of the fee, lease part of it as a site for a warehouse for a company that

manufactured furnaces not far from the right-of-way. Anderson v. Interstate Mfg. Co., 152 Iowa 455, 132 N.W. 812, 36 L. R. A., N. S., 512. A valuable note accompanies the report in L. R. A. Other decisions to the effect a railroad may permit warehouses on its right-of-way on the ground such use facilitates the receipt, transportation and discharge of freight and is a railroad use are cited in the annotation, 94 A. L. R. 522, 535. See also annotation, 149 A. L. R. 378.

In the Anderson case the lessee agreed only to give the railroad preference on freight shipments provided its rates were as low as those of other railroads. Here, as a practical matter, all shipments of oil to Severs must be made by defendant railway.

Other uses of railroad land which have been upheld include erection of coal yards and sheds, grain elevators, buildings, platforms and other structures convenient for the receipt and delivery of freight, lumberyards, corncribs and cattle pens. Note 36 L. R. A., N. S., 512, 516–520; Annotations, 94 A. L. R. 522, 529–535; 149 A. L. R. 378, 380, 381; 74 C. J. S., Railroads, sections 99a, 101a; 44 Am. Jur., Railroads, sections 144, 145, 147, 148. Hohl v. Iowa Central R. Co., 162 Iowa 66, 74, 75, 143 N.W. 850, holds use of a right-of-way by a third party, under a license from the railroad, to haul sand for shipment over the railroad is proper, even though it affords a means of profit to the individual.

It has been held railroad purposes include such a variety of uses as changes in circumstances may bring about, depending upon the facts in each case. Toledo, P. & W. R. R. v. Brown, 375 Ill. 438, 31 N.E.2d 767, 770; Mitchell v. Illinois Central R. Co., 384 Ill. 258, 51 N.E.2d 271, 274, 149 A. L. R. 369, 374. This last case upholds use by a railroad having an easement in it of a right-of-way as a site for a combined bulk and retail gasoline station. Basis for the decision is that operation of such a business was incidental to railroad purposes. The Mitchell opinion distinguishes In re Chicago & N.W. Ry. Co., 7 Cir., Ill., 127 F.2d 1001, by saying the use prohibited there was held to be in reality merely a retail filling station, although denominated a bulk oil and retail filling station (page 276 of 51 N.E.2d).

Weir v. Standard Oil Co., 136 Miss. 205, 101 So. 290, holds part of a right-of-way acquired for railroad purposes could be leased for a bulk oil station.

The Mitchell and Weir cases go further than we do here in apparently approving bulk storage on railroad right-of-way of gasoline, not merely less flammable fuel oil.

Support for our holding is also found in Earley v. Hall, 89 Conn. 606, 95 A. 2, 3; Rombaur v. St. Louis-San Francisco Ry. Co., 225 Mo. App. 78, 34 S.W.2d 155; Hodges v. Atlantic Coast Line R. Co., 196 N. C. 66, 144 S.E. 528, 59 A. L. R. 1284, and annotation, 1287; Magnolia Petroleum Co. v. Caswell, Tex. Civ. App., 295 S.W. 653.

III. The question of claimed violation of the county zoning ordinance remains. The railroad land is zoned light industrial. Bulk petroleum stations, gasoline filling stations, and other uses compatible with them are permissible. The ordinance provides, however, for underground storage only of inflammable liquids. There is no evidence No. 5 or 6 fuel oil is inflammable in the sense used in the ordinance. Mr. Severs testified they are not inflammable. Mr. Jersild testified for plaintiff on direct examination, "Oil No. 5 and 6 are not what they call flammable. They will burn." Mr. Jersild's home adjoins plaintiff's on the east. He was a coplaintiff in the trial court and had worked for the Standard Oil Company for 41 years, although not as a chemist.

Plaintiff argues it is common knowledge No. 5 and 6 fuel oil are inflammable and asks us to so find notwithstanding the testimony to the contrary. In effect we are asked to take judicial notice oil of this kind is inflammable. We are satisfied we would not be justified in so doing. The question of flammability of this product was treated in the trial court as a proper subject for testimony and we so treat it here.

The zoning ordinance also provides, "No use shall be permitted * * * which by reason of its nature or manner of operation is or may become hazardous, noxious, or offensive owing to the emission of *odor, dust,* smoke, cinders, gas fumes, *noise, vibration,* refuse matter, or water-carried waste." We have emphasized the words which are pertinent here.

There is evidence defendant Severs has violated this provi-

sion but in our opinion it is insufficient to warrant an injunction against his use of the property adjoining the spur. Plaintiff complains of odor from the fuel oil. It would seem little odor could come from the oil except what would be spilled in transferring it from the tank cars to the trucks. There is evidence Severs keeps a man in attendance when the cars are unloaded and it is the normal type of unloading such cars. While Severs admitted there would be some odor he testified no one other than plaintiff and Jersild had complained about it.

There is also evidence of dust, noise and vibration caused by the trucks and transports using the drive. Complaint is also made of vibration from the movable pump used in emptying the cars. The pump, with engine attached, is moved by a small tractor. The engine is the smallest gasoline engine the Ford company builds—the same size used in its Falcon automobiles. The pump and engine are mounted on inflated rubber tires. Severs testified it is inconceivable the unit would cause vibration. There is also evidence cars are occasionally unloaded at night and the attendant noise makes it difficult to sleep. We have considered enjoining Severs from use of the strip at night but no such partial relief is suggested.

Substantially all the evidence of annoyance from Severs' use of the right-of-way came from plaintiff herself although Mr. Jersild also testified to difficulty of sleep from noise and vibration.

Plaintiff's property has always adjoined the railroad right-of-way where trains run occasionally day and night. It is outside the Des Moines city limits. Only 160 feet separate her property from Second Avenue, a primary four-lane highway carrying heavy traffic. Many commercial and industrial plants face Second Avenue in this area, including a huge Firestone plant on the west side, just north of the railroad.

The contention Severs has violated the ordinance provision last quoted is in effect that he has committed a nuisance plaintiff is entitled to enjoin. See sections 657.1, 657.2 as to what are nuisances. We are not persuaded what has been done here is shown to amount to a nuisance.

Other questions in the case need not be discussed. We think the trial court reached a correct result. The decree is—Affirmed.

All JUSTICES concur except HAYS, J., not sitting.